# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Arquest, Inc., ) | |
| ) | |
| Plaintiff ) | Case No. 07 CV 11202 (CM) |
| ) | |
| v. ) | |
| ) | |
| Kimberly-Clark Worldwide, Inc., ) | |
| ) | |
| Defendant ) | |

**MEMORANDUM OF LAW IN SUPPORT OF KIMBERLY-CLARK WORLDWIDE'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, TO DISMISS OR TRANSFER**

# TABLE OF CONTENTS

I.    Introduction ............................................................................................................. 1

II.    This Court Cannot Properly Exercise Personal Jurisdiction Over KCWW ........................ 3

    A.    KCWW Has No Contacts with New York ..................................................... 3

    B.    Legal Background Regarding Personal Jurisdiction ....................................... 4

    C.    This Court Does Not Have Personal Jurisdiction Over KCWW ..................... 6

III.    Alternatively, The Court Should Exercise Its Discretion And Decline Jurisdiction or
Transfer This Action To Texas ................................................................................... 8

    A.    Factual Background ....................................................................................... 8

        1.    The Negotiations Between KCWW and Arquest ...................................... 8

        2.    The Two Lawsuits Now Pending Between KCWW and Arquest ............... 10

    B.    All Counts Should be Dismissed Because of Arquest's Tactical Gamesmanship ....... 12

        1.    Arquest's Desire to Continue Negotiations Post-Filing Evidences that Its
Declaratory Complaint Was Filed as a Negotiating Tactic ...................... 13

        2.    Arquest's Lack of Service Evidences Its Preemptive Use of the Declaratory
Judgment Act .......................................................................................... 15

    C.    Alternatively, All Counts Should Be Transferred as their Subject Matter Is
Pending in the Northern District of Texas .................................................... 17

        1.    Transfer of All Counts to Texas is in the Interest of the Convenience of the
Parties and Witnesses ............................................................................. 19

        2.    Transfer of All Counts to Texas is in the Interest of Judicial Efficiency ........... 19

        3.    Transfer of All Counts to Texas is in the Public Interest in Expedient
Litigation ................................................................................................ 20

        4.    The Remaining Factors Are Neutral with Respect to Transfer or Favor
Transfer .................................................................................................. 21

IV.    Conclusion ............................................................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*,
   11 F. Supp. 2d 729 (S.D.N.Y. 1998) ...................................................................................... 18

*Aqua Prods., Inc. v. Smartpool, Inc.*,
   No. 04-5492, 2005 WL 1994013 (S.D.N.Y. Aug. 18, 2005)...................................................... 6

*AT&T v. Milgo Elec. Corp.*,
   428 F. Supp. 50 (S.D.N.Y. 1977) ............................................................................................ 18

*Beacon Enters., Inc. v. Menzies*,
   715 F.2d 757 (2d Cir. 1983) ..................................................................................................... 5

*Chew v. Dietrich*,
   143 F.3d 24 (2d Cir. 1998) ....................................................................................................... 6

*EMC Corp. v. Norand Corp.*,
   89 F.3d  807 (Fed. Cir. 1996) ..................................................................................... 12, 13, 14

*EMS-American Grilon Inc. v. DSM Resins U.S. Inc.*,
   15 U.S.P.Q.2d 1472, 1989 WL 230919 (D. N.J. 1989) ........................................................... 14

*Foster-Milburn Co. v. Knight*,
   181 F.2d 949 (2d Cir. 1950) ................................................................................................... 18

*Gen. Tire & Rubber Co. v. Jefferson Chem. Co.*,
   50 F.R.D. 112 (S.D.N.Y. 1970) ............................................................................................... 21

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
   466 U.S. 408, 104 S.Ct. 1868 (1984).......................................................................................... 6

*Herbert Ltd. Partnership v. Elec. Arts, Inc.*,
   325 F. Supp. 2d 282 (S.D.N.Y. 2004) ..................................................................................... 21

*Hoffman v. Blaski*,
   363 U.S. 335, 80 S. Ct. 1084 (1960).......................................................................................... 18

*Hunt Mfg. Co. v. Fiskars OY AB*,
   No. 97-2460, 1997 WL 667117 (E.D. Pa. Oct. 2, 1997) .................................................... 15, 16

*Intria Corp. v. Intira Corp.*,
   No. 00 CIV 7198, 2000 WL 1745043 (S.D.N.Y. Nov. 27, 2000) ............................................ 22

*Kernan v. Kurz-Hastings, Inc.*,
   175 F.3d 236 (2d Cir. 1999) ..................................................................................................... 5

*LG Elecs. Inc. v. First Int'l Computer,*
  138 F. Supp.2d 574 (D. N.J. 2001) ........................................................................ 18

*Lonza Inc. v. Rohm & Haas, Inc.,*
  951 F.Supp. 46 (S.D.N.Y. 1997) ..................................................................... 13, 16

*Lyons Indus. Inc. v. Am. Standard Inc.,*
  993 F. Supp. 609 (W.D. Mich. 1997) .................................................................. 15

*MedImmune, Inc. v. Genentech, Inc.,*
  127 S.Ct. 764 (2007).............................................................................................. 12

*Metro Optics, Inc. v. Contex, Inc.,*
  No. 95 CV 2157, 1996 WL 302697 (N.D. Tex. March 14, 1996)........................... 16

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
  84 F.3d 560 (2d Cir. 1996) .................................................................................... 5

*Nat'l Foam, Inc. v. Williams Fire & Hazard Control, Inc.,*
  No. 97-3105, 1997 WL 700496 (E.D. Pa. Oct. 29, 1997) ....................................... 17

*Pertuit v. Youthspan, Inc,*
  No. 02-1188, 2003 WL 356021 (E.D. La. Feb. 13, 2003)....................................... 14

*Rates Tech. Inc. v. Nortel Networks Corp.,*
  399 F.3d 1302 (Fed. Cir. 2005) ............................................................................ 4

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
  148 F.3d 1355 (Fed. Cir. 1998) ............................................................................ 7

*Serco Services Co. v. Kelley Co., Inc.,*
  51 F.3d 1037 (Fed. Cir. 1995) ....................................................................... 12, 16

*Silent Drive, Inc. v. Strong Indus., Inc.,*
  326 F.3d 1194 (Fed. Cir. 2003) ............................................................................ 4

*Trintec Indus. Inc. v. Pedre Promotional Prods. Inc.,*
  395 F.3d 1275 (Fed. Cir. 2005) ............................................................................ 4

*Van Dusen v. Barrack,*
  376 U.S. 612,  84 S.Ct. 805 (1964)....................................................................... 17

*Wilton v. Seven Falls Co.,*
  515 U.S. 277, 115 S.Ct. 2137 (1995)..................................................................... 12

*World-Wide Volkswagon Corp. v. Woodson,*
  444 U.S. 286, 100 S.Ct. 559 (1980)....................................................................... 6

**Publications**

Federal Civil Practice (Georgene M. Vairo et al. eds., 1989 & Supp. 2000) ........................ 17, 18

**Rules**

28 U.S.C. § 1338 ............................................................................................................ 18

28 U.S.C. § 1391 ......................................................................................................... 4, 18

28 U.S.C. § 1404 ..................................................................................................... passim

CPLR § 301 ................................................................................................................. 4, 5

CPLR § 302 .......................................................................................................... 4, 5, 6, 7

Fed.R.Civ.P. 12(b)(2) ................................................................................................... 1, 5

Fed.R.Civ.P. 21 .......................................................................................................... 2, 17

## I. INTRODUCTION

Defendant, Kimberly-Clark Worldwide, Inc. ("KCWW"), moves for dismissal of Plaintiff's, Arquest, Inc. ("Arquest"), Declaratory Judgment Complaint due to a lack of personal jurisdiction over KCWW under Rule 12(b)(2) of the Federal Rules of Civil Procedure. Alternatively, KCWW moves to have the Court decline declaratory judgment jurisdiction or transfer the action from this district – which has little, if any connection to either party – to the Northern District of Texas, where (1) KCWW's corporate headquarters are located, (2) a parallel infringement action filed by KCWW is co-pending, which encompasses the substance of this action, and (3) the parties resolved a previous patent infringement suit. Thus, even if the court finds that personal jurisdiction is appropriate, the Court should not condone Arquest's misleading behavior and should exercise its discretion to dismiss or, in the alternative, transfer the case to the Northern District of Texas.

First, this Court lacks personal jurisdiction over KCWW because KCWW has no presence in, or contacts with, New York. It is undisputed that:

- KCWW does not engage in any activity within New York.

- KCWW has no employees, offices or inventory in New York.

- KCWW is not registered or licensed to do business in New York.

- KCWW has not made, used, sold or offered to sell any products in New York.

Thus, this Court cannot properly exercise personal jurisdiction over KCWW.

Second, even if the Court does not dismiss the complaint for lack of personal jurisdiction over KCWW, the Court should exercise its discretion to dismiss the case or, alternatively, transfer the case to the Northern District of Texas. Courts generally have denied declaratory

1

judgment jurisdiction where, like here, the suit was filed purely to gain tactical advantage while settlement negotiations continue.

The history of the parties' negotiations show that Arquest's purpose was merely to gain tactical settlement and litigation advantage, and reserve its choice of venue. It is undisputed that:

- Settlement negotiations have been ongoing for several months;

- The parties entered into a series of "Standstill Agreements" to not file suit during negotiations;

- After the last Standstill Agreement expired, Arquest contacted KCWW to continue settlement negotiations;

- Arquest represented to KCWW that it was sending a redesigned prototype that could potentially resolve certain issues involved in the negotiations;

- While KCWW was waiting for the promised prototype from Arquest, Arquest filed its Complaint in this district – a forum in which Arquest has no principal location; and

- Arquest admitted this action was filed as a "placeholder" while negotiations continued.

Finally, if the Court does not dismiss the case, transfer of the case to the Northern District of Texas, pursuant to Fed.R.Civ.P. 21 and 28 U.S.C. § 1404, is appropriate here. It is undisputed that:

- All declaratory judgment counts in the New York complaint relate to the three patent infringement counts currently pending before the Texas complaint;

- Jurisdiction is proper over Arquest and KCWW in the Northern District of Texas;

- KCWW has no contacts with the Southern District of New York;

- Arquest, an Arkansas company, itself has few, if any, contacts with the Southern District of New York;

- KCWW's corporate headquarters are based in the Northern District of Texas; and

- The docket in the Northern District of Texas has more capacity to take on this multi-patent dispute, and promptly resolve it under its new Local Patent Rules.

Accordingly, even if the Court does not dismiss the Complaint, the action should be transferred to the Northern District of Texas

## II. THIS COURT CANNOT PROPERLY EXERCISE PERSONAL JURISDICTION OVER KCWW

### A. KCWW HAS NO CONTACTS WITH NEW YORK

KCWW is a Delaware corporation, with its commercial domicile in Texas. (Misun Declaration ("Misun Dec."), ¶ 4). KCWW owns the majority of the patents and trademarks of the global Kimberly-Clark entities. (*Id.*). KCWW employs most of Kimberly-Clark's intellectual property lawyers in Neenah, Wisconsin and Roswell, Georgia. (*Id.* at ¶ 11). None of KCWW's employees are located in New York. (*Id.* at ¶ 12).

KCWW has three major administrative sites located in Irving, Texas, Roswell, Georgia, and Neenah, Wisconsin. (Misun Dec., ¶ 5). None are located in New York. (*Id.* at ¶ 12).

KCWW owns and operates three manufacturing, or milling, facilities located in Fullerton, California, Everett, Washington, and Ogden, Utah. (Misun Dec., ¶ 6).[1] No KCWW manufacturing or milling facilities or employees are located in New York. (*Id.* at ¶ 12). KCWW does not own any raw materials, work-in-process or finished goods inventory for any of the goods it manufactures. (*Id.* at ¶ 7). KCWW does not manufacture, use, sell or offer to sell any products in New York. (*Id.* at ¶ 8).

KCWW's long range research is conducted in Roswell, Georgia and quality control in Neenah, Wisconsin and Roswell, Georgia. (Misun Dec., ¶¶ 9-10). No KCWW quality control personnel are located in New York. (*Id.* at ¶ 10).

Further, KCWW is not registered or licensed to do business in New York. (Misun Dec., ¶ 13). KCWW does not have any physical presence (including offices, employees or inventory)

---

[1] KCWW also owns the assets of an idle mill in Mohave, Arizona. (*Id.* at ¶ 6).

in New York. (*Id.* at ¶ 12). KCWW does not own or operate any facilities or assets in New York. (*Id.*).

Based on these undisputed facts, it is not surprising that Arquest failed to allege any basis for personal jurisdiction of KCWW in New York in its Complaint. Arquest asserts only that KCWW is a Delaware corporation "with a business and mailing address at 351 Phelps Drive, Irving, Texas, 75038." (Complaint, Ct. Dkt. No. 1, ¶ 3). Moreover, Arquest's complaint is devoid of any alleged connection of Arquest to New York. (Complaint, Ct. Dkt. No. 1, ¶ 2 ("Arquest asserts that Arquest is a corporation organized and existing under the laws of the State of Arkansas with a business and mailing address at 101 Interchange Plaza, Cranbury, New Jersey, 08512.")). Because Arquest has not cited any possible basis for personal jurisdiction in New York, KCWW addresses the lack of personal jurisdiction under CPLR § 301 and 302(a).[2]

**B. LEGAL BACKGROUND REGARDING PERSONAL JURISDICTION**

In patent cases, the issue of personal jurisdiction is governed by Federal Circuit law. *Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1307 (Fed. Cir. 2005). In a declaratory judgment action for non-infringement, the issue of personal jurisdiction is "intimately related to patent law" and thus governed by Federal Circuit law regarding due process. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). First, the Court must determine whether jurisdiction exists under the state long-arm statute. *Trintec Indus. Inc. v. Pedre Promotional Prods. Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005). If so, then the Court must determine whether the exercise of jurisdiction would be consistent with the due process clause of the Constitution. *Id.*

---

[2]    In addition, venue is not proper in this district. Arquest asserts in its complaint that "[v]enue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c)." (Complaint, Ct. Dkt. No. 1, ¶ 6). Because KCWW has no contacts to New York and, as discussed below, personal jurisdiction is not proper, venue is also not proper. *See* 28 U.S.C. 1391(c).

The New York long arm statute allows a court to exercise general jurisdiction over non-residents "doing business" in New York. CPLR § 301. Even if the defendant is not "doing business" within New York pursuant to CPLR § 301, the Court may exercise specific jurisdiction if the cause of action arises out of specifically enumerated acts. CPLR § 302(a).

When a defendant brings a motion under Fed.R.Civ.P. 12(b)(2) to dismiss an action for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). The plaintiff bears "the ultimate burden of proving the court's jurisdiction by a preponderance of the evidence." *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 762 (2d Cir. 1983).

Under CPLR § 301, personal jurisdiction over a non-domiciliary defendant such as KCWW may be exercised if the defendant engages in business activities within New York which are "continuous and systematic." *Beacon,* 715 F.2d at 762. To prove general personal jurisdiction under CPLR § 301, the plaintiff must demonstrate that the defendant is "doing business" in New York "with a fair measure of permanence and continuity." *Id.* (citations omitted).

CPLR § 302, provides, in part, the following:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

5

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state; or

(ii) expects or should reasonably expect the act to have consequences in the state or derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

CPLR § 302(a).

To prove specific jurisdiction under CPLR § 302(a), therefore, Arquest must establish that KCWW transacts business in New York, that it purposefully availed itself to the privilege of doing business in New York such that it could foresee being brought into court there, and that the Arquest's claim arises out of or is related to the KCWW's purported contacts with New York. *Aqua Prods., Inc. v. Smartpool, Inc.*, No. 04-5492, 2005 WL 1994013 at *5 (S.D.N.Y. Aug. 18, 2005) (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872 (1984); *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567 (1980); *Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir. 1998)).    Importantly, defensive declaratory judgment actions, such as this one, are not typically cases New York courts link to § 302(a) jurisdiction. *Beacon*, 715 F.2d at 764.

## C. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER KCWW

Personal jurisdiction, either general or specific, cannot be exercised over KCWW in this case.   Simply put, KCWW has no contacts with New York and, thus, cannot be considered to "have a fair measure of permanence and continuity of contacts" with the forum state.   General jurisdiction does not apply to KCWW.

As stated above and attested to in the Misun Declaration, KCWW is not registered or licensed to do business in New York. (Misun Dec., ¶ 13). In addition, KCWW does not own property in New York, nor does it maintain any offices in New York. (*Id.* at ¶ 12). None of KCWW's employees are located in New York. (*Id.*). None of KCWW's manufacturing facilities are located in New York. (*Id.* at ¶ 6). Moreover, KCWW does not manufacture, sell, offer to sell, distribute or ship any products in New York. (*Id.* at ¶ 8). KCWW, therefore, does not have minimum contacts with New York and, thus, could not reasonably anticipate being haled into court in New York. Consequently, exercising personal jurisdiction over KCWW would not comport with "traditional notions of fair play and substantial justice" because KCWW has no contact with the forum state. *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998).

Additionally, Arquest's declaratory judgment lawsuit does not arise out of any supposed contacts KCWW has with New York. Rather, the lawsuit arises from Arquest's infringement of KCWW's patents. Under CPLR § 302(a), KCWW does not meet any of the requirements for this Court to exercise specific personal jurisdiction. Specifically, KCWW does not transact business nor has it contracted or supplied goods or services in New York, (Misun Dec., ¶ 8), this action is a declaratory judgment lawsuit based on Arquest's infringing acts, and not any alleged tortious acts of KCWW, (Complaint, Ct. Dkt. No. 1) and KCWW does not own, use or possess any property in New York. (Misun Dec., ¶ 12). Specific jurisdiction, therefore, does not apply.

Because Arquest cannot meet its burden of establishing that KCWW has any contacts with New York, and certainly not the minimum contacts required by the New York long arm statutes and the Constitution, the Court should dismiss Arquest's complaint against KCWW for lack of personal jurisdiction. *See Red Wing Shoe Co.*, 148 F.3d at 1359-62 (affirming dismissal

of a declaratory judgment action for lack of personal jurisdiction where the patentee's only contacts with the forum state were the cease and desist letters written to the alleged infringer and sales in the forum state by licensees).

## III. ALTERNATIVELY, THE COURT SHOULD EXERCISE ITS DISCRETION AND DECLINE JURISDICTION OR TRANSFER THIS ACTION TO TEXAS

If the Court concludes that it can exercise personal jurisdiction over KCWW, it should still decline to hear this dispute. Arquest filed this suit to gain tactical advantage during active settlement negotiations, and the suit has little if any connection with this forum. Thus, dismissal or transfer to the pending Dallas action is appropriate.

### A. FACTUAL BACKGROUND

#### 1. THE NEGOTIATIONS BETWEEN KCWW AND ARQUEST

Before Arquest filed the complaint in this case, KCWW and Arquest were engaged in long standing settlement discussions regarding three patents owned by KCWW. (Complaint, Ct. Dkt. No. 1, ¶¶ 9-12). The settlement discussions began in July 2007. (*Id.* at ¶ 9). In order to facilitate settlement without litigation, the parties entered into the first in a series of Stand-Still Agreements on July 18, 2007. (Exhibit A to Declaration of Vicki Margolis ("Margolis Dec."), Stand-Still Agreement dated July 18, 2007, at p. 1).[3]

On August 20, 2007, three days after KCWW could have filed suit pursuant to the first agreement, KCWW and Arquest executed a further Stand-Still Agreement.[4] (Exhibit B t o Margolis Dec., Stand-Still Agreement dated August 20, 2007, at p. 1). As settlement discussions continued, the parties extended the Stand-Still Agreement several additional times. (*See* Exhibit C to Margolis Dec., Stand-Still Agreement dated August 30, 2007; Exhibit D to Margolis Dec.,

---

[3]    All of the Exhibits referenced herein as "Exhibit _ to Margolis Dec." are attached to the Declaration of Vicki Margolis filed concurrently with this Memorandum.

[4]    Because settlement negotiations between the parties were ongoing, KCWW did not file suit despite the expiration of the time period in the Stand-Still Agreement. (Margolis Dec., ¶ 5).

Stand-Still Agreement dated September 14, 2007[5]; Exhibit E to Margolis Dec., Stand-Still Agreement dated September 28, 2007; Exhibit F to Margolis Dec., Stand-Still Agreement dated October 19, 2007; Exhibit G to Margolis Dec., Stand-Still Agreement dated November 2, 2007). The final Stand-Still Agreement extended the dates into December. (Exhibit H to Margolis Dec., Stand-Still Agreement dated November 16, 2007).

The parties allowed the November 16, 2007 Stand-Still Agreement to expire. Thus, KCWW could have filed suit on December 7, 2007. KCWW did not file suit, however, because the parties were still engaged in settlement discussions. (Margolis Dec., ¶ 7)

On December 11, 2007 (the day before Arquest filed suit against KCWW in New York), Brian Siff, Arquest's outside counsel who was engaged in settlement negotiations, contacted KCWW to further discuss settlement. In particular, Mr. Siff called to discuss a prototype that Arquest had constructed based on the parties' previous discussions. (*Id.* at ¶ 9). KCWW's in-house counsel responsible for the negotiations requested that Arquest send the prototype for KCWW's review. (*Id.*). Mr. Siff agreed to forward the prototype to KCWW's counsel, though he stated he may want to review the prototype before sending it. (*Id.*).

On December 12th, KCWW's counsel contacted Mr. Siff to learn when KCWW could expect the prototype from Arquest. (*Id.* at ¶ 10). Mr. Siff indicated that Arquest shipped the prototype to him to review; once received, he would send it on to KCWW the same day. (*Id.*). Mr. Siff stated that KCWW would therefore likely receive the Arquest prototype by Friday, December 14th. (*Id.*). During this call with KCWW's counsel, Mr. Siff did not disclose the fact that Arquest was filing a Complaint that day against KCWW in New York. (*Id.*).

---

[5]    This Stand-Still Agreement was executed one day after KCWW could have filed suit pursuant to the prior agreement, but again did not. (*Id.* at ¶ 6).

The next morning, on December 13, 2007, Mr. Siff called KCWW to further discuss the promised prototype. (*Id.* at ¶ 11). Mr. Siff provided some of the design details of the prototype product. Mr. Siff also informed KCWW's counsel that Arquest had filed suit in this district the previous day, December 12th. (*Id.* at ¶ 12). Arquest's counsel stated that the complaint was intended to be a "placeholder," and that Arquest fully hoped to resolve the suit without ever having to serve process. (*Id.*). Counsel for KCWW expressed KCWW's surprise and disappointment upon hearing of the case filed by Arquest, and requested a copy of the Complaint from Mr. Siff. (*Id.* at ¶¶ 12-13).

At the end of the day of December 13th, after learning of Arquest's lawsuit in New York, KCWW filed a complaint for patent infringement in the Northern District of Texas. (Exhibit I to Margolis Dec., Texas Complaint).

Arquest has sent KCWW the promised prototype and the parties have had subsequent discussions related to the prototype and settlement. (*Id.* at ¶ 15). The parties agreed to Joint Stipulations to Extend Time in both the New York and Texas Courts to continue settlement discussions and both Courts entered Orders extending the dates to respond to the complaint until February 4, 2008. (*Id.* at ¶ 16; Exhibit J to Margolis Dec., Stipulations to Extend Time to Respond in New York and Texas).

## 2.  THE TWO LAWSUITS NOW PENDING BETWEEN KCWW AND ARQUEST

Arquest filed the present action in New York on December 12, 2007. Arquest, however, did not serve KCWW with process until December 14, 2007, after being served with the complaint filed by KCWW in the Northern District of Texas.

The New York Complaint contains nine counts.  Count I is for declaratory judgment of non-infringement of KCWW's U.S. Patent No. 5,286,543 ("the '543 patent")[6].  Count II is for declaratory judgment of non-infringement of KCWW's U.S. Patent No. 5,496,298 ("the '298 patent").  Count III is for declaratory judgment of non-infringement of KCWW's U.S. Patent No. 6,307,119 ("the '119 patent").  Count IV is for declaratory judgment of invalidity of the '543 patent.  Count V is for declaratory judgment of invalidity of the '298 patent.  Count VI is for declaratory judgment of invalidity of the '119 patent.  Count VII is for declaratory judgment of unenforceability of the '298 patent.  Count VIII is for declaratory judgment that KCWW is equitably estopped from enforcing the '543 patent against Arquest.  Finally, Count IX is for a declaratory judgment that laches bars KCWW from asserting any claim of infringement under the '543 patent.  (Complaint, Ct. Dkt. No. 1).

After learning of Arquest's race to the courthouse via its filing in New York, KCWW and its sister corporation, Kimberly-Clark Global Sales, Inc. ("KCGS") filed a three-count action in the Northern District of Texas on December 13, 2007.  (Exhibit I to Margolis Dec., Texas Complaint).  The Texas Complaint was served on Arquest the same day it was filed – December 13, 2007.  (Margolis Dec., ¶ 14).  Only after Arquest was served with the Texas Complaint did Arquest serve KCWW with the New York Complaint – on December 14, 2007.  (*Id*. at ¶ 15).

The Texas Complaint alleges Arquest's infringement of the same three KCWW patents that are the subject of the New York Complaint, including: (1) the '119 patent; (2) the '298 patent; and (3) the '543 patent.  (*See* Exhibit I to Margolis Dec., Texas Complaint).  Thus, all of the New York declaratory judgment claims overlap with the patent infringement claims in the

---

[6]    Arquest's Complaint incorrectly refers to this patent as U.S. Patent No. 5,287,543.

Texas action, or will relate to counterclaims and/or affirmative defenses that Arquest may raise in the Texas action.

### B. ALL COUNTS SHOULD BE DISMISSED BECAUSE OF ARQUEST'S TACTICAL GAMESMANSHIP

This Court has broad discretion to decline jurisdiction over all of the declaratory judgment counts in Arquest's New York Complaint, and, thus, dispose of this entire case. (Ct. Dkt. No. 1). The Declaratory Judgment Act accords "unique and substantial discretion" to district courts to decline to entertain jurisdiction. *MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 776 (2007), quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 2142 (1995); *see also EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996), *overruled in part on other grounds by MedImmune*, 127 S.Ct. at 776 ("When there is no actual controversy, the court has no discretion to decide the case. When there is an actual controversy and thus [subject matter] jurisdiction, the exercise of that jurisdiction is discretionary."). All of the counts in Arquest's complaint in this case are for declaratory judgment, and therefore, subject to this Court's discretion to hear. (*See* Complaint, Ct. Dkt. No. 1). "[T]here is no absolute right to a declaratory judgment, for the statute specifically entrusts courts with discretion to hear declaratory suits or not depending on the circumstances." *Serco Services Co. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995).[7] In the instant case, the Court should exercise its discretion and dismiss the New York Complaint.

When, as here, a plaintiff uses the Declaratory Judgment Act as a tactical measure, courts routinely exercise their discretion to dismiss declaratory judgment claims. *See e.g., id.*; *EMC,* 89 F.3d at 807. The Declaratory Judgment Act "was intended to provide a vehicle by which parties

---

[7]    The law of the Federal Circuit also governs the discretionary determination whether a declaratory judgment suit or a later-filed infringement suit should proceed. *Serco,* 51 F.3d at 1038.

could obtain judicial determinations of unsettled legal positions, not a means of procedural manipulation in search of a forum perceived by a prospective defendant as more favorable." *Lonza Inc. v. Rohm & Haas, Inc.,* 951 F.Supp. 46, 50 (S.D.N.Y. 1997) (exercising discretion to dismiss declaratory judgment claims for invalidity and non-infringement).

### 1. ARQUEST'S DESIRE TO CONTINUE NEGOTIATIONS POST-FILING EVIDENCES THAT ITS DECLARATORY COMPLAINT WAS FILED AS A NEGOTIATING TACTIC

Arquest filed its Complaint in a transparent effort to gain leverage in the parties' ongoing negotiations by attempting to secure the New York forum for any possible future litigation. Specifically, the day before filing the Arquest complaint in New York, Mr. Siff, counsel for Arquest, placed a telephone call to KCWW's counsel, indicating that Arquest would be sending a prototype with proposed design changes. (Margolis Dec., ¶ 9). KCWW contacted Mr. Siff on December 12, 2007, the day that Arquest filed its Complaint (unbeknownst to KCWW), to inquire when KCWW could expect to receive the prototype. (*Id.* at ¶ 10). Mr. Siff stated that KCWW should be receiving the prototype on December 14th. Mr. Siff did not mention that Arquest had filed, or was in the process of filing, its Complaint. (*Id.*). Finally, on December 13th, Mr. Siff notified KCWW of Arquest's New York filing. (*Id.* at ¶ 12). At the same time, Mr. Siff stated that the Complaint was filed as a "placeholder," and that Arquest was still committed to resolving the issues between the parties. (*Id.*). These actions and statements indicate that Arquest's complaint was intended to give Arquest increased leverage in the ongoing negotiations through the prospect of haling KCWW into a venue with which it has no contacts, and thus preempt forum selection in the event that the negotiations eventually broke down.

In *EMC*, the Federal Circuit affirmed the district court's discretionary decision to dismiss a declaratory judgment complaint in a situation remarkably similar to the instant case. *EMC,* 89 F.3d at 809. Like Arquest, the declaratory judgment plaintiff in *EMC* called the defendant after

13

the commencement of suit to explain that the suit was a defensive step, and offered to "continue to discuss . . . all the options hopefully in a more meaningful manner over the near term." *Id.* at 815. The district court dismissed the declaratory judgment action finding that:

> to allow a declaratory judgment to proceed under such circumstances would encourage parties who were negotiating with patentees to use the declaratory judgment procedure to improve their bargaining positions and to impede negotiations between patentees and other potential licensees or buyers.

*Id.* at 810. In affirming dismissal, the Federal Circuit found that the circumstances of the case, and particularly the plaintiff's phone call, illustrated that the "declaratory judgment complaint [was] a tactical measure filed in order to improve EMC's posture in the ongoing negotiations – not a purpose the Declaratory Judgment Act was designed to serve." *Id.*

Like the plaintiff's call in *EMC*, Arquest's call indicates that Arquest's complaint was a tactical maneuver designed to improve Arquest's "posture" in the ongoing negotiations with KCWW. Like *EMC's* Complaint, Arquest's declaratory judgment Complaint should be dismissed.

In fact, district courts routinely refuse to entertain declaratory judgment actions initiated when the patentee is engaged in negotiations, but the declaratory judgment plaintiff is engaged in gamesmanship, because such actions thwart the purpose of the Declaratory Judgment Act:

> [T]he Court is also of the opinion that when it appears–as it does in this case–that the ***Declaratory Judgment Act has been used as a procedural "fencing device"*** to secure delay or choose a forum other than that in which the action would normally be heard, ***it is proper for the Court to dismiss or transfer the action to the forum in which the subsequently filed infringement suit is pending.***

*EMS-American Grilon Inc. v. DSM Resins U.S. Inc.,* 15 U.S.P.Q.2d 1472, 1475, 1989 WL 230919 (D. N.J. 1989) (citations omitted; emphasis added); *see also Pertuit v. Youthspan, Inc,* No. 02-1188, 2003 WL 356021 at *6 (E.D. La. Feb. 13, 2003) ("by reaching the merits in Action 1, the declaratory action, this Court would be condoning the gamesmanship of the Pertuit

plaintiffs while punishing the Youthspan defendants for attempting to resolve the dispute and thereby thwarting the purposes of the Declaratory Judgment Action [sic]"); *Hunt Mfg. Co. v. Fiskars OY AB*, No. 97-2460, 1997 WL 667117 at \*4 (E.D. Pa. Oct. 2, 1997) ("Hunt's declaratory judgment action cut short the possibility of extra-judicial settlement. Permitting this case to go forward would discourage similar efforts at informal settlement and promote 'irresponsible litigation'") (citation omitted).

Arquest's filing of the New York case as a "placeholder," while at the same time continuing the ongoing settlement negotiations, is an attempt to afford itself an unfair tactical advantage. This Court should not reward Arquest's gamesmanship by consenting to hear Arquest's complaint. Arquest's complaint should be dismissed.

## 2. ARQUEST'S LACK OF SERVICE EVIDENCES ITS PREEMPTIVE USE OF THE DECLARATORY JUDGMENT ACT

In addition to the fact that Arquest filed its complaint during the parties' negotiations, Arquest's failure to immediately serve the complaint is further evidence that the complaint was filed as an improper tactical measure. In a post-filing conversation with counsel for KCWW, Arquest's counsel stated that, while Arquest had filed a complaint against KCWW, it hoped to resolve the suit without ever having to serve the complaint. (Margolis Dec., ¶ 13). Arquest's decision to file, but not serve, its complaint reflects that Arquest was not using the Declaratory Judgment Act to obtain the swift legal resolution of a dispute. *Lyons Indus. Inc. v. Am. Standard Inc.*, 993 F. Supp. 609, 614 (W.D. Mich. 1997) (stating that the purpose of the Declaratory Judgment Act is to allow one charged with infringement to obtain a legal determination "without waiting").

Instead, by its own admission, Arquest put in place a litigation "placeholder" in anticipation of possible litigation with KCWW. Arquest served its complaint only after KCWW

filed and served its own action in Texas.  It is appropriate to dismiss a declaratory judgment action in this situation.  *See, e.g., Metro Optics, Inc. v. Contex, Inc.,* No. 95 CV 2157, 1996 WL 302697 at *2 (N.D. Tex. March 14, 1996) (transferring to venue where defendant filed an infringement action because the court found that plaintiff would have had no reason to withhold service if the true intent was other than anticipatory filing, which is not the purpose of the Declaratory Judgment Act).

Consistent with the interests of justice, the order of filing the suits is not determinative of whether declaratory judgment jurisdiction should be maintained.  This and other courts have dismissed or transferred a declaratory judgment suit in favor of a second filed suit instituted by the declaratory judgment defendant, when the first suit anticipated the later suit or was merely preemptive.  *See, e.g., Lonza,* 951 F.Supp. at 50 (Declaratory Judgment Act "not a means of procedural manipulation in search of a forum perceived by a prospective defendant as more favorable"); *Serco,* 51 F.3d at 1040 (affirming dismissal of preemptive declaratory judgment action); *Hunt Mfg.,* 1997 WL 667117 at *4 ("Hunt's only purpose for bringing this action on the 10th must have been to surprise Fiskars and have this litigation take place in Pennsylvania rather than Wisconsin").

Arquest's tactics precisely fit the pattern of cases where the courts dismiss declaratory judgment claims in favor of the patentee's later-filed action.  Arquest misled KCWW by expressing its intent to continue settlement negotiations with a promised prototype "to be delivered," while simultaneously filing suit.  Arquest's filing of its complaint as a "placeholder" and its delay in serving KCWW evidence its plan to forum shop and improperly place KCWW at a tactical disadvantage in settlement negotiations, and in litigation.  This Court should exercise its discretion to dismiss Arquest's complaint.

16

**C. ALTERNATIVELY, ALL COUNTS SHOULD BE TRANSFERRED AS THEIR SUBJECT MATTER IS PENDING IN THE NORTHERN DISTRICT OF TEXAS**

Even if this Court does not dismiss the action, the Court should transfer the case to the Northern District of Texas. Tactical gamesmanship justifies a Court's transfer of declaratory judgment claims to the forum where an infringement action is pending, even if that action was filed after the declaratory action. *Nat'l Foam, Inc. v. Williams Fire & Hazard Control, Inc.*, No. 97-3105, 1997 WL 700496 at *7 (E.D. Pa. Oct. 29, 1997). Transfer to the Northern District of Texas, pursuant to Fed.R.Civ.P. 21 and 28 U.S.C. § 1404, is appropriate in this case.

All of the declaratory judgment counts in the New York Complaint relate to the three patent infringement counts in the Texas Complaint. (*See* Complaint, Ct. Dkt. No. 1; Exhibit I to Margolis Dec., Texas Complaint). Furthermore, in the Texas action, the same issues presented here – infringement, enforceability, and validity of the KCWW patents as well as any other related counterclaims and defenses – will be determined by the Texas court. Thus, Arquest is not without a forum for a determination of the questions presented in each of the counts in its New York Complaint.[8] It would be a waste of judicial resources, however, to allow these same claims to be litigated in two different forums. *See, e.g., Nat'l Foam,* 1997 WL 700496 at *10 (duplicative proceedings avoided by transfer).

Under 28 U.S.C. § 1404, this Court may transfer an action to a jurisdiction where it might have been brought. *Van Dusen v. Barrack*, 376 U.S. 612, 624, 84 S.Ct. 805, 813 (1964) (holding "that the words 'where it might have been brought' must be construed with reference to the federal laws delimiting the districts in which such an action 'may be brought'"). Courts have interpreted this to mean that the transferee court must: have subject matter jurisdiction; be a proper venue; and have power to issue process over the parties. Federal Civil Practice 73

---

[8] Whether this Court dismisses the Counts or transfers them, the practical effect will likely be the same because Arquest's declaratory judgment claims are compulsory counterclaims.

(Georgene M. Vairo et al. eds., 1989 & Supp. 2000) (citing *Hoffman v. Blaski*, 363 U.S. 335, 80 S. Ct. 1084 (1960); *Foster-Milburn Co. v. Knight*, 181 F.2d 949 (2d Cir. 1950); *AT&T v. Milgo Elec. Corp.*, 428 F. Supp. 50 (S.D.N.Y. 1977)).

In the instant case, these threshold requirements are met in the Northern District of Texas. Subject matter jurisdiction exists in every district court to hear patent cases. *See* 28 U.S.C. § 1338. Jurisdiction is proper over Arquest in the Northern District of Texas as Arquest sells infringing products in Texas through retailers including, at least, Toys "R" Us. (*See* Exhibit I to Margolis Dec., Texas Complaint). Venue is also proper as venue is proper where a company is subject to personal jurisdiction. *See* 28 U.S.C. 1391(c).

Once it is determined that an action could have been brought in another forum, "[i]n deciding whether to transfer, the courts are to consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by a transfer to a different forum." *LG Elecs. Inc. v. First Int'l Computer,* 138 F. Supp.2d 574, 586 (D. N.J. 2001). Factors this Court should consider in deciding a motion to transfer under 28 U.S.C. § 1404 (a) include: (1) convenience of witnesses; (2) convenience of the parties (3) judicial efficiency, including the ability to consolidate with a closely related action; (4) calendar congestion; (5) availability of process to compel unwilling witnesses; (6) weight accorded plaintiff's choice of forum; (7) relative means of the parties; (8) locus of the operative facts; (9) ability to implead a necessary third party; (10) relative ease of access to sources of proof; and (11) desirability of having cases decided by a court familiar with the substantive law. *See* Federal Civil Practice 74-75 (Georgene M. Vairo et al. eds., 1989 & Supp. 2000); *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 11 F. Supp. 2d 729, 730 (S.D.N.Y. 1998). Each

factor may be accorded different weight and no single factor is dispositive. As described below, the factors weigh in favor of transfer to Texas.

### 1. TRANSFER OF ALL COUNTS TO TEXAS IS IN THE INTEREST OF THE CONVENIENCE OF THE PARTIES AND WITNESSES

A primary factor considered in deciding a motion to transfer is "the convenience of the parties and witnesses." 28 U.S.C. § 1404(a). Here, the convenience of the parties favors Texas for trial and pre-trial proceedings on all counts.

Inexplicably, Arquest filed suit in New York where, in addition to the lack of personal jurisdiction with respect to KCWW, no parties have significant ties. (*See* Complaint, Ct. Dkt. No. 1, ¶¶ 2-3). KCWW has its principal place of business and corporate headquarters in Texas and has substantial operations, including offices, functions and executives in Texas. Furthermore, the attorney who prosecuted one of the K-C patents, who may testify with respect to issues relating to the prosecution of the patent, is located in Dallas, Texas. (Margolis Dec., ¶ 18).

In contrast, Arquest is organized under Arkansas law and has a mailing address in New Jersey. Arquest's manufacturing, research and development are in Arkansas, near the Texas court. Any burden on the parties and likely witnesses to travel to Dallas is significantly less than the burden in traveling to New York. The convenience of the parties and witnesses weighs in favor of transfer to Texas, as does the relative ease of the access to sources of proof.

### 2. TRANSFER OF ALL COUNTS TO TEXAS IS IN THE INTEREST OF JUDICIAL EFFICIENCY

Arquest and a related K-C entity were previously involved in a patent infringement lawsuit in the Northern District of Texas. In resolving that dispute, and not contesting that it infringed K-C's patents, Arquest expressly agreed that personal jurisdiction over Arquest was proper in the Northern District of Texas. In fact, Arquest is currently subject to personal

19

jurisdiction in the Texas Court to enforce the prior judgment entered against it. (Exhibit K to Margolis Dec., Agreed Judgment and Decree filed in *Kimberly-Clark Corporation v. Arquest, Inc.*, Case No. 95CV915).

Judicial efficiency in this case would similarly be served by trying the instant dispute in the Northern District of Texas. KCWW filed its currently pending lawsuit in that court. Allowing both cases to move forward would require two courts to determine at least the issues of validity, infringement and enforceability in both courts. Moreover, in order to move forward in this Court, a ruling on whether personal jurisdiction is proper needs to be made. If this case is tried and personal jurisdiction is found to be lacking on appeal, the time and effort of this Court and the parties would be wasted. On the other hand, jurisdiction is much clearer in the Northern District of Texas. For example, it is undisputed that Arquest sells its infringing products in Texas.

Although this case should be dismissed for lack of personal jurisdiction over KCWW, transfer to Texas would obviate the need for such a determination while providing Arquest with a proper venue for all of its claims to be heard in accordance with the goals of the Declaratory Judgment Act, upon which Arquest bases its subject matter jurisdiction. Therefore, judicial economy weighs in favor of transferring this case to the Northern District of Texas, the venue of the prior patent infringement suit between the parties.

### 3. TRANSFER OF ALL COUNTS TO TEXAS IS IN THE PUBLIC INTEREST IN EXPEDIENT LITIGATION

The Northern District of Texas is less taxed by pending cases than the Southern District of New York, and provides an efficient forum for the resolution of these Counts. According to judicial statistics, the Southern District of New York had 716 pending cases per judgeship in 2006, while the Northern District of Texas had approximately half as many pending cases per

judgeship, or 361.  (Exhibit 1, Judicial Statistics).  Further, the median time from filing to trial for civil actions in the Northern District of Texas is shorter than that of the Southern District of New York – 25.7 months in the Southern District of New York and 20 months in the Northern District of Texas.  (*Id.*).  Thus, Texas would likely offer the parties a more expedient forum for the resolution of all issues.[9]  *See, e.g., Gen. Tire & Rubber Co. v. Jefferson Chem. Co.*, 50 F.R.D. 112, 115 (S.D.N.Y. 1970) (transferring claim to district court with less litigation backlog). Moreover, failure to transfer Arquest's counts would defeat a primary goal of the Declaratory Judgment Act, which is to allow the accused infringer to obtain an expedient resolution.

### 4.  THE REMAINING FACTORS ARE NEUTRAL WITH RESPECT TO TRANSFER OR FAVOR TRANSFER

The remaining factors are generally neutral or favor a transfer to Texas.  In particular, the differences in the availability of process to compel unwilling witnesses and the means of the parties are negligible in the context of this suit.  There is no necessary third party to implead and the substantive law in this case is federal patent law, rendering these factors irrelevant.  The relative ease of access to sources of proof would weigh slightly in favor of Texas over New York because KCWW is based in Texas and neither party has significant contacts with New York. Additionally, the electronic nature of litigation minimizes this factor in many situations.

Furthermore, although a plaintiff's choice of forum normally is a factor weighing against transfer, Arquest's choice here should be accorded little, if any, weight because it does not reside in this district.  *Herbert Ltd. Partnership v. Elec. Arts, Inc.*, 325 F. Supp. 2d 282, 291 (S.D.N.Y. 2004) ("plaintiff's choice of forum receives less deference when that forum is not the plaintiff's home district and there is no material connection between either the plaintiff or the underlying

---

[9]    The Northern District of Texas is also well suited to handle patent cases in an efficient and expedient manner.  In 2007, the Dallas division of the Northern District of Texas adopted local rules for the "efficient and effective management of patent cases."  *See* http://www.txnd.uscourts.gov/pdf/misc_orders/misc62_4-2-07.pdf.

transactions and the chosen forum"); *Intria Corp. v. Intira Corp.*, No. 00 CIV 7198, 2000 WL 1745043 at *8 (S.D.N.Y. Nov. 27, 2000) ("where the forum is not the plaintiff's home district, the plaintiff's choice of forum is given less deference, even when the plaintiff's home district is adjacent to the forum").[10]

## IV. CONCLUSION

For the foregoing reasons, this Court should dismiss Arquest's complaint because this Court does not have personal jurisdiction over KCWW. Alternatively, this Court should either exercise its discretion under the Declaratory Judgment Act to dismiss Arquest's complaint or transfer the Complaint to the Northern District of Texas under 28 U.S.C. § 1404.

Dated: February 4, 2008
     New York, New York

Respectfully submitted,

Edmund M. O'Toole (EO 7939)
Matthew T. McLaughlin (MM 6241)
Gregory W. Gilliam (GG 2857)
**Venable, LLP**
The Chrysler Building
405 Lexington Avenue, 56th Floor
New York, NY 10174
Tel. (212) 307-5500

Marc S. Cooperman, Esq.*
Janice V. Mitrius, Esq.*
Thomas J. Lerdal, Esq.*
**Banner & Witcoff, LTD.**
10 South Wacker Drive, Suite 3000
Chicago, IL 60606
Tel: (312) 463-5000

(* *Pro Hac Vice* Admission pending.)

**Attorneys for Plaintiff**
**Kimberly-Clark Worldwide, Inc.**

---

[10]    This factor is further diminished because Arquest choice of forum is the apparent result of its improper strategic maneuvering with KCWW during settlement negotiations.

# EXHIBIT 1

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **NEW YORK SOUTHERN** | | | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | | |
| | | | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | | 12,201 | 12,945 | 12,422 | 12,321 | 13,937 | 12,783 | U.S. | Circuit |
| | Terminations | | | 11,339 | 11,346 | 11,471 | 10,780 | 12,618 | 11,247 | | |
| | Pending | | | 20,047 | 19,302 | 17,638 | 17,275 | 16,198 | 15,818 | | |
| | % Change in Total Filings | Over Last Year | | -5.8 | | | | | | 56 | 5 |
| | | Over Earlier Years | | | -1.8 | -1.0 | -12.5 | -4.6 | | 59 | 2 |
| Number of Judgeships | | | | 28 | 28 | 28 | 28 | 28 | 28 | | |
| Vacant Judgeship Months** | | | | 2.0 | 6.3 | 8.8 | 33.3 | 15.8 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | | 435 | 462 | 444 | 441 | 498 | 457 | 43 | 3 |
| | | Civil | | 385 | 409 | 388 | 381 | 441 | 420 | 21 | 3 |
| | | Criminal Felony | | 34 | 40 | 44 | 47 | 48 | 37 | 87 | 6 |
| | | Supervised Release Hearings** | | 16 | 13 | 12 | 13 | 9 | - | 64 | 5 |
| | Pending Cases | | | 716 | 689 | 630 | 617 | 579 | 565 | 8 | 2 |
| | Weighted Filings** | | | 501 | 551 | 527 | 513 | 539 | 560 | 28 | 3 |
| | Terminations | | | 405 | 405 | 410 | 385 | 451 | 402 | 55 | 3 |
| | Trials Completed | | | 13 | 15 | 16 | 17 | 15 | 15 | 71 | 3 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | | 16.7 | 14.5 | 11.9 | 11.8 | 13.3 | 12.3 | 93 | 6 |
| | | Civil** | | 8.3 | 8.8 | 8.1 | 8.4 | 8.3 | 7.2 | 23 | 1 |
| | From Filing to Trial** (Civil Only) | | | 25.7 | 22.0 | 26.8 | 22.6 | 23.0 | 24.4 | 48 | 1 |
| OTHER | Civil Cases Over 3 Years Old** | Number | | 3,107 | 2,652 | 1,656 | 1,312 | 1,230 | 1,585 | | |
| | | Percentage | | 18.4 | 16.7 | 11.6 | 9.2 | 9.2 | 12.1 | 89 | 6 |
| | Average Number of Felony Defendants Filed Per Case | | | 1.7 | 1.9 | 1.7 | 1.5 | 1.5 | 1.6 | | |
| | Jurors | Avg. Present for Jury Selection | | 96.33 | 99.86 | 88.01 | 82.96 | 83.28 | 73.12 | | |
| | | Percent Not Selected or Challenged | | 60.4 | 62.0 | 53.1 | 54.8 | 61.9 | 53.2 | | |

| **2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE** | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 10793 | 230 | 767 | 1147 | 88 | 38 | 945 | 2257 | 1622 | 835 | 1374 | 66 | 1424 |
| Criminal* | 943 | 5 | 269 | 170 | 111 | 225 | 29 | 28 | 11 | 24 | 24 | 9 | 38 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.

\*\* See "Explanation of Selected Terms."

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **TEXAS NORTHERN** | | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | | |
| OVERALL CASELOAD STATISTICS | Filings* | | 5,646 | 5,895 | 6,560 | 6,985 | 6,591 | 5,991 | U.S. | Circuit |
| | Terminations | | 5,745 | 6,179 | 7,191 | 6,111 | 6,413 | 6,406 | | |
| | Pending | | 4,326 | 4,390 | 4,686 | 5,455 | 4,496 | 4,342 | | |
| | % Change in Total Filings | Over Last Year | | -4.2 | | | | | 46 | 5 |
| | | Over Earlier Years | | | -13.9 | -19.2 | -14.3 | -5.8 | 61 | 8 |
| | Number of Judgeships | | 12 | 12 | 12 | 12 | 12 | 12 | | |
| | Vacant Judgeship Months** | | .0 | .0 | 8.5 | 2.4 | 18.4 | 12.0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 470 | 491 | 547 | 582 | 549 | 499 | 31 | 5 |
| | | Civil | 376 | 399 | 452 | 479 | 462 | 431 | 25 | 3 |
| | | Criminal Felony | 64 | 61 | 66 | 78 | 64 | 68 | 54 | 6 |
| | | Supervised Release Hearings** | 30 | 31 | 29 | 25 | 23 | - | 26 | 3 |
| | Pending Cases | | 361 | 366 | 391 | 455 | 375 | 362 | 54 | 8 |
| | Weighted Filings** | | 493 | 495 | 548 | 581 | 520 | 517 | 32 | 6 |
| | Terminations | | 479 | 515 | 599 | 509 | 534 | 534 | 34 | 5 |
| | Trials Completed | | 24 | 29 | 28 | 27 | 24 | 28 | 24 | 3 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 7.2 | 7.1 | 6.7 | 5.9 | 6.3 | 5.9 | 26 | 3 |
| | | Civil** | 7.4 | 8.6 | 7.4 | 7.2 | 6.6 | 7.1 | 11 | 3 |
| | From Filing to Trial** (Civil Only) | | 20.0 | 20.7 | 21.7 | 18.6 | 18.7 | 23.3 | 21 | 4 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 146 | 49 | 29 | 126 | 69 | 86 | | |
| | | Percentage | 4.3 | 1.4 | .8 | 2.8 | 1.8 | 2.3 | 28 | 4 |
| | Average Number of Felony Defendants Filed Per Case | | 1.5 | 1.6 | 1.5 | 1.5 | 1.7 | 1.7 | | |
| | Jurors | Avg. Present for Jury Selection | 39.54 | 40.42 | 51.06 | 50.46 | 56.30 | 47.80 | | |
| | | Percent Not Selected or Challenged | 36.2 | 34.8 | 43.9 | 54.9 | 54.1 | 52.7 | | |

| **2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE** | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 4516 | 187 | 150 | 1759 | 71 | 46 | 189 | 561 | 233 | 312 | 534 | 4 | 470 |
| Criminal* | 767 | 10 | 139 | 154 | 160 | 95 | 48 | 24 | 46 | 35 | 14 | 11 | 31 |

\*  Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\** See "Explanation of Selected Terms."