UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                           :

ARQUEST, INC.,                        :

                    :  Civ. Action No.: 1:07-cv-11202 (CM)

          Plaintiff,           :

                    :  ECF Case

     v.                   :

                    :  Jury Demanded

KIMBERLY-CLARK WORLDWIDE, INC.,   :

                    :

         Defendant.         :

                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW OF PLAINTIFF, ARQUEST, INC., IN OPPOSITION TO THE MOTION OF DEFENDANT, KIMBERLY-CLARK WORLDWIDE, INC., TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, DISMISS OR TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS**

Brian D. Siff (BS 6135)
Richard LaCava (RL 1671)
Peter Lambrianakos (PL 5075)
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 277-6500

Attorneys for Plaintiff
Arquest, Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.    PRELIMINARY STATEMENT ................................................................................1

II.   STATEMENT OF FACTS ........................................................................................2

      A.    KCWW Commences Negotiations with Arquest in New York..............................2

      B.    KCWW Refuses to Execute a Ninth Stand-Still Agreement,
            and Litigation Ensues............................................................................................2

      C.    KCWW Has Extensive Contacts with this Forum .................................................4

      D.    Arquest Has a Strong Interest in Litigating in this Forum ....................................4

III.  LEGAL ARGUMENTS.............................................................................................5

      A.    This Court Has Personal Jurisdiction Over Defendant ...........................................5

            1.    This Court Has General Jurisdiction Over Defendant .................................5

            2.    This Court Has Specific Jurisdiction Over Defendant.................................8

                  a.    New York's Long-Arm Statute Supports the Exercise of
                        Personal Jurisdiction Over Defendant...........................................9

                  b.    This Court's Exercise of Personal Jurisdiction Over
                        Defendant Satisfies Constitutional Due Process...............11

      B.    This Court Should Retain Jurisdiction Over This Action .....................................14

            1.    Arquest's First-Filed Suit Should Continue in this Forum .......................14

            2.    This District Is the Most Appropriate Forum for this Dispute..................18

IV.   CONCLUSION.........................................................................................................21

DOCSNY-292537

# TABLE OF AUTHORITIES

Page

Cases

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128 (S.D.N.Y. 1994)14, 15, 17, 21

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25 (2d Cir. 1996)..................10

*American Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474 (S.D.N.Y. 2006) ..........................................................................................................................19, 20

*American Steamship Owners Mutual Prot. & Indem. Ass'n v. LaFarge North amer., Inc.*, 474 F. Supp. 2d 474 (S.D.N.Y. 2007)..................................................................................20

*Ayyash v. Bank Al-Madina*, 2006 WL 587342 (S.D.N.Y. 2006) ......................................................7

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120 (2d Cir. 2002) ..............9

*Beacon Enters., Inc. v. Menzies*, 715 F.2d 757 (2d Cir. 1983) ........................................................10

*Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d. 367 (S.D.N.Y. 2006) ...........18

*Breckenridge Pharma., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356 (Fed. Cir. 2006)11, 12, 13, 14

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)................................................................13

*Chestnut Ridge Air, Ltd. v. 1260269 Ontario Inc.*, 13 Misc. 3d 807, 827 N.Y.S.2d 461 (Sup. Ct. 2006)...........................................................................................................................6

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000)...................14, 15, 17, 21

*City of New York v. Exxon Corp.*, 932 F.2d 1020 (2d Cir. 1991) ...................................................14

*Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp. 62 (S.D.N.Y. 1993) ..............................................................................................................19, 20

*EMC Corp. v. Norand Corp.*, 89 F.3d 807 (Fed. Cir. 1996)........................................................18

*Filius v. Lot Polish Airlines*, 907 F.2d 1328 (2d Cir. 1990) ..........................................................7

*Genetic Implant Sys. v. Core-Vent Corp.*, 123 F.3d 1455 (Fed. Cir. 1997)................................12

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir. 1985) ......................................5, 9

DOCSNY-292537

*International Securities Exch., LLC v. Chicago Bd. Options Exch., Inc.*, 2007 WL 2319128 (S.D.N.Y. 2007) ..................................................................................................... 19

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988) ........................................................................................................................................ 9

*Landoil Resources Corp. v. Alexander & Alexander Svces., Inc.*, 918 F.2d 1039 (2d Cir. 1990) ........................................................................................................................................ 6

*Lipton v. Nature Co.*, 781 F. Supp. 1032 (S.D.N.Y. 1992) .......................................................... 19

*Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144 (S.D.N.Y. 1995) ............. 15, 16

*PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997) ....................................... 5, 9, 10, 11

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998) ................. 13

*Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 115 N.E. 915 (1917) ......................................... 6

*William Gulkin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177 (2d Cir. 1969) ................................ 14

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000) ........................................ 5, 6, 7


Statutes

28 U.S.C. § 1404(a) ...................................................................................................................... 18

C.P.L.R. § 301 ................................................................................................................................. 5

C.P.L.R. § 302(a)(1) ....................................................................................................................... 9

DOCSNY-292537

Arquest, Inc. ("Arquest") first-filed a declaratory judgment action against Kimberly-Clark Worldwide, Inc. ("KCWW") in the United States District Court for the Southern District of New York. The next day, KCWW and Kimberly-Clark Global Sales, Inc. ("KCGS") filed an action in the Northern District of Texas. KCWW now moves to dismiss Arquest's first-filed action in this Court for lack of personal jurisdiction, or, in the alternative, dismiss or transfer this action to the Northern District of Texas.

## II.        PRELIMINARY STATEMENT

By signed agreement of the parties, KCWW had the exclusive right to file a patent infringement lawsuit before Arquest *in the forum of its choice*. Thus, there was no "race to the courthouse" or forum shopping – Arquest relinquished the right to file the first action to KCWW.

When KCWW opted not to file suit, Arquest filed this action, as was its right. The very next day, KCWW and KCGS filed a mirror-image action in the Northern District of Texas to create the illusion that Arquest's first-filed action was a preemptive strike, and to manufacture a basis to seek the transfer of this case to Texas.

Because its tactics are transparent, KCWW does not venture to explain why it waived its right to file the first suit and then rushed to file in Texas. Instead, it criticizes Arquest's earnest attempt to reduce the scope of this suit as "tactical gamesmanship" in an attempt to undermine the legitimacy of this suit.

KCWW also argues that this case should be dismissed because it is not subject to personal jurisdiction in New York, even though KCWW reached out to Arquest's counsel in this district to negotiate this dispute and to actively seek changes to Arquest's products to Arquest's detriment. Moreover, KCWW fails to point out that two of the patents-in-suit, as well as its trademarks and copyrights, are used under license by its affiliated distributor, KCGS (a plaintiff in the Texas action), to sell millions of dollars worth of diapers and training pants throughout this district. Apparently, KCWW's idea of "fair play and substantial justice" is that it may enrich itself in this district while remaining beyond the reach of its courts.

Arquest respectfully requests that this Court see through KCWW's disingenuous tactics, deny KCWW's motion in its entirety, and permit Arquest's first-filed action to proceed.

1

## III.    STATEMENT OF FACTS

### A.    KCWW Commences Negotiations with Arquest in New York

On or about June 28, 2007, KCWW's in-house counsel at KCWW in Neenah, Wisconsin reached out to Arquest's counsel in New York to notify it that KCWW believed that certain Arquest products infringed KCWW's patents. *See* Declaration of Brian D. Siff ("Siff Decl.") at ¶ 2. KCWW would not discuss specifics, however, unless Arquest entered into a stand-still agreement forbidding either party from commencing litigation during negotiations. *See id.*

KCWW first proposed a stand-still agreement that gave KCWW a one-week exclusive window to file suit, without restrictions as to forum, should negotiations fail and the stand-still agreement be allowed to expire without any extensions. *See id.* at ¶ 3; Ex. A. Although Arquest resisted conceding to KCWW the right to file the first suit, Arquest ultimately agreed to give KCWW a three-day exclusive window to file suit in the forum of its choice. *See id.* at ¶¶ 4-5. The first Stand-Still Agreement was executed on July 18, 2007. *See id.* at ¶ 5.

After the first Stand-Still Agreement was signed, KCWW's counsel revealed that it was alleging that Arquest infringed three of KCWW's patents: U.S. Patent Nos. 5,286,543; 5,496,298; and 6,307,119. *See id.* at ¶ 6.

Over the next six months, KCWW projected itself into this forum for the purpose of negotiating a settlement of the infringement issues and negotiating modifications to Arquest's products. *See id.* at ¶ 21. KCWW negotiated seven additional Stand-Still Agreements with New York counsel; negotiated numerous issues relating to the infringement of KCWW's patents with New York counsel; discussed revisions to Arquest's diapers and training pants; negotiated verbal settlement frameworks for certain discrete issues of alleged infringement; and, in connection with these efforts, exchanged at least 50 telephone calls, e-mail messages and faxes on a regular and continuous basis with Arquest's counsel in New York. *See id.*

### B.    KCWW Refuses to Execute a Ninth Stand-Still Agreement, and Litigation Ensues

Vicki Margolis, in-house litigation counsel for KCWW, became involved in the negotiations in early November 2007. *See id.* at ¶ 9. On November 16, 2007, Ms. Margolis agreed that KCWW would enter into an eighth Stand-Still Agreement. *See id.* at ¶ 10. The

2

eighth Stand-Still Agreement was the final one, because on December 6, 2007, Ms. Margolis said that KCWW was not willing to enter into another Stand-Still Agreement.[1] *See id.* at ¶ 11.

Arquest believed that KCWW refused to enter into a new Stand-Still Agreement because it intended to file suit during its three-day exclusive window. *See id.* at ¶¶ 12-13. When Arquest was not served with a complaint on December 7 or December 10, Arquest determined that if KCWW had not filed suit, it would use the looming threat of a lawsuit as leverage in negotiations with Arquest. *See id.* at ¶ 13. Nevertheless, Arquest was still committed to achieving a global settlement for all three of the patents at issue. *See id.*

Arquest was never served with a complaint, but it decided that it would file a declaratory judgment action in this district because it believed that a global settlement of all the issues was unlikely. *See id.* at 14. The negotiation of certain issues, such as those involving KCWW's U.S. Patent No. 5,286,543, had reached an impasse. *See id.*

Although Arquest had decided to file this action, negotiations continued because, for the benefit of both parties, Arquest hoped to settle as many issues as possible to limit the scope and expense of any lawsuit. *See id.* at ¶ 15.

On December 12, 2007 Arquest filed this action. *See id.* at ¶ 16. Arquest did not immediately serve the complaint on KCWW. *See id.* Instead, on December 13, 2007, counsel for Arquest contacted counsel for KCWW to inform them that Arquest had filed the complaint, but did not intend to immediately serve it on KCWW. *See id.* Counsel's intention was to show good faith by refraining from active litigation while the parties worked to limit the scope of the case as much as possible. *See id.* In particular, counsel for Arquest referred to the complaint as a "placeholder" because the complaint contained counts regarding all of the products and patents that the parties had been negotiating as part of the global settlement, even though the parties had reached a verbal understanding of the parameters for settlement of certain products and/or patents. *See id.* Thus, it was unclear at the time the complaint was filed whether KCWW would

---

[1] At no time was Arquest unwilling to execute a further Stand-Still Agreement. *See* Siff Decl. at ¶ 8. While Ms. Margolis is technically correct that KCWW could have filed suit on August 17, 2007 and September 13, 2007, (See Margolis Decl. at ¶¶ 5, 6), the parties had already verbally agreed as of those dates to execute a new Stand-Still Agreement. *See* Siff Decl. at ¶ 8. Thus, on August 17 and September 13, Arquest was confident that a new Stand-Still Agreement was going to be signed, and therefore, Arquest did not believe it was under a threat of a lawsuit at those times. *Id.* In any event, Ms. Margolis was not involved in the negotiations during this time frame. *Id.*

3

agree to remove from the case claims of infringement with respect to specific products or patents even though a global settlement had not been reached. *See id.* If KCWW did not agree to settle with respect to specific products or patents that had been resolved as part of the global settlement, then those products and patents would continue to be part of the complaint. *See id.*

Contrary to KCWW's arguments, Arquest did not file this suit to gain a tactical advantage in negotiations, partake in "gamesmanship," or somehow coerce KCWW, a subsidiary of a multi-billion dollar corporation, into settling with Arquest. *See id.* at ¶ 17.

KCWW and KCGS filed their suit in the Northern District of Texas on December 13, 2007, the very day that they learned of this suit. *See id.* at ¶ 16.

### C.    KCWW Has Extensive Contacts with this Forum

KCWW has strong and continuous contacts with the Southern District of New York. According to Huggies® diaper packaging on sale in this district, KCWW distributes its products in New York State through KCGS, a related entity, which is registered to do business in New York. *See id.* at ¶ 18. The product packaging states that the products are covered by several patents assigned to KCWW, including U.S. Patent Nos. 5,286,543 and 6,307,119, which are at issue in this case. *See id.*; Ex. J-K. The product packaging also states that KCWW licenses its trademarks and copyrights to KCGS for use in connection with these sales. *See id.*

Moreover, since KCWW is the sole entity shown in the United States Patent & Trademark Office's database as an assignee of any of the patents-in-suit, it appears that KCGS has licensed the patents-in-suit from KCWW for the purpose of distributing products in New York covered by KCWW's patents. *See id.* at ¶ 19. KCGS's rights may include the right to file suit, as it did in the Texas action.[2] *See id.* at ¶ 20.

### D.    Arquest Has a Strong Interest in Litigating in this Forum

Arquest is a privately-held corporation based in Cranbury, New Jersey with annual revenues of $125 million. *See* Declaration of Matthew J. Rinaldi ("Rinaldi Decl.") at ¶ 2. Arquest designs and develops its products at its headquarters in Cranbury, New Jersey, and in East Camden, Arkansas, and manufactures them in Arkansas. *See id.* at ¶ 4. Arquest's

---

[2] Arquest is not aware of the full contractual relationship between KCWW and KCGS at this time without further discovery.

DOCSNY-292537

documents relating to its business activities are located in New Jersey and Arkansas. *See id.* at ¶ 5.

Arquest chose to file this suit in the Southern District of New York in order to minimize its costs and maximize its convenience. *See id.* at ¶ 6. Arquest has a strong interest in limiting the costs of this litigation, especially in view of KCWW's relative size and financial strength. *See id.* Since Arquest's counsel is located in the Southern District of New York, filing here allows Arquest to avoid retaining local counsel while at the same time providing for a convenient forum for its contemplated potential witnesses, Matthew Rinaldi and Reid Macfarlan, who are based in Cranbury, New Jersey, less than 50 miles from this Court. *See id.*; Siff Decl. at ¶ 22.

Arquest has no ties with the Northern District of Texas. *See* Rinaldi Decl. at ¶ 7. Arquest has no facilities, operations, or employees in the Northern District of Texas, and its sole contact with that district is that its products may ultimately be sold to consumers there. *See id.*

## IV.    LEGAL ARGUMENTS

### A.    This Court Has Personal Jurisdiction Over Defendant

KCWW's motion to dismiss for lack of personal jurisdiction should be denied because KCWW is subject to both general and personal jurisdiction in this district. To defeat this motion, Arquest need only allege facts constituting a *prima facie* showing of personal jurisdiction, and the pleadings and affidavits are to be construed in Arquest's favor. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). Based on all of the evidence in the record, Arquest has met its burden.

### 1.    This Court Has General Jurisdiction Over Defendant

This Court has general jurisdiction over KCWW under N.Y. C.P.L.R. § 301 because KCWW is "doing business" in New York. "A corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (quoting *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,

DOCSNY-292537

763 F.2d 55, 58 (2d Cir. 1985) and *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917).

"The test is a 'simple pragmatic one,' . . . which is necessarily fact sensitive because each case is dependent upon its own particular circumstances. . . . The Court must therefore analyze a defendant's connections to the forum state 'not for the sake of contact-counting, but rather for whether such contacts show a continuous, permanent and substantial activity in New York.'" *Landoil Resources Corp. v. Alexander & Alexander Svces., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) (internal citations omitted).

Among the factors considered in evaluating general jurisdiction is whether the defendant "solicited business" in New York. *See id.* at 1043. Although solicitation alone does not justify the exercise of jurisdiction, "if the solicitation is substantial and continuous, and defendant engages in other activities of substance in the state, then personal jurisdiction may properly be found to exist." *Id.* at 1043-44.

"The continuous presence and substantial activities that satisfy the requirement of doing business do not necessarily need to be conducted by the foreign corporation itself." *Wiwa*, 226 F.3d at 95. Rather,

> a court of New York may assert jurisdiction over a foreign corporation when it affiliates itself with a New York representative entity and that New York representative renders services on behalf of the foreign corporation that go beyond mere solicitation and are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available.

*Id.*

Under this rule, the plaintiff is not required to prove the existence of a formal agency agreement or the exercise by defendant of direct control over the in-state agent, but plaintiff must show that the in-state agent does not provide similar services for other entities. *Id.*

Recent New York case law has confirmed that the defendant need not physically enter New York to be subject to general jurisdiction. In *Chestnut Ridge Air, Ltd. v. 1260269 Ontario Inc.*, 13 Misc. 3d 807, 827 N.Y.S.2d 461 (Sup. Ct. 2006), the court found general jurisdiction over a defendant who solicited business in New York using a web site. Due to the extent of defendant's contacts with New York, the fact that it was not physically in New York was deemed "of no moment." *Id.*, 13 Misc. 3d at 810, 827 N.Y.S.2d at 465.

6

The central issue in determining whether a defendant is subject to general jurisdiction is thus "whether the defendant *or its agent* behaved in such a way so as to encourage others to spend money (or otherwise act) in a manner that would benefit the defendant." *Wiwa*, 226 F.3d at 98.

KCWW is subject to general jurisdiction in New York because it has projected itself in to this forum in a permanent and continuous manner for the purpose of profiting from the New York market. Specifically, with respect to sales of Huggies ® brand diapers, KCWW has licensed the use of its copyrights and trademarks for use on product packaging so as to induce customers to purchase its products. *See* Siff Decl. at ¶ 18. KCWW cannot deny that Huggies ® brand diapers are sold throughout this forum on a continuous basis, that Huggies ® is a well-known and powerful brand name, and that KCWW profits handsomely from sales of diapers using this mark and its distinctive copyrighted packaging in New York. It is also beyond dispute that consumers in New York would regard Huggies ® diapers bearing KCWW's marks and copyrighted packaging as permanent fixtures in retail outlets throughout this district.

Furthermore, as the owner of the many patents listed on its packaging, KCWW enjoys the protection that this district's courts provide to a patent holder against infringers in New York. Indeed, Huggies ® brand diapers and training pants are specifically marked with two of the patents-in-suit for the purpose of notifying the public – including everyone in this district – of KCWW's patent rights. *See* Siff Decl. at ¶ 18.

KCWW's intellectual property would be ineffectual if it did not have a distributor to sell the covered products in this district. According to the packaging on Huggies ® brand products purchased in New York, KCGS is the distributor of the diapers covered by KCWW's intellectual property. *See id.* KCGS is registered to do business in New York, and must, by virtue of its position as a distributor, solicit sales in New York, deliver products to the hundreds or thousands of retail outlets that sell them in this district, and collect revenues.[3] KCGS fulfills all of the sales and marketing functions that bring value to KCWW's intellectual property.

Although it is unclear whether KCGS is KCWW's agent, the law nevertheless imputes its actions to KCWW for general jurisdiction purposes because KCGS is an affiliated

---

[3] Were this Court to determine that the record lacks sufficient evidence of KCGS's activities in this forum, or KCWW's relationship to KCGS, Arquest requests that this Court permit jurisdictional discovery on these topics. *See Ayyash v. Bank Al-Madina*, 2006 WL 587342 at * 5 (S.D.N.Y. 2006) (citing *Filius v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990)).

DOCSNY-292537

entity that represents KCWW's interests in this forum, and does so with the requisite permanence and continuity. The facts will also show that KCGS does not distribute diapers and training pants produced by KCWW's competitors.

Based on KCGS's activities in this forum, KCWW reaps massive benefits, in the form of money, goodwill, etc. KCWW's success is directly dependent on KCGS's actions in this district. Basically, KCWW realizes no benefit whatsoever in this jurisdiction from its patents (and copyrights and trademarks) unless KCGS distributes its covered products.

Furthermore, based on the fact that KCGS is also a plaintiff in the second-filed action in Texas, it now appears that KCWW has given KCGS permission to institute suits for infringement of KCWW's patents.[4] *See id.* at ¶ 20. A review of the agreement between KCWW and KCGS could confirm this arrangement, and may also reveal whether KCWW has maintained control over whether KCGS may institute infringement actions to protect KCWW's intellectual property, which would lend further support to Arquest's argument.

KCWW, through the carefully delineated Declaration of Charles Misun, would have this Court find that KCWW may exploit its billion-dollar brand, Huggies®, in this district and throughout this country while availing itself to the jurisdiction of only a select few districts. Meanwhile, its nationwide distribution arm, KCGS, would only be subject to a declaratory judgment action for non-infringement of its licensed patents in a district where KCWW, a necessary party, could also be found. KCWW and KCGS should not be permitted to profit from this forum while insulating themselves from the reach of its courts.

Thus, KCWW acts through its affiliate KCGS in such a way that is calculated to "encourage others to spend money or otherwise act in a manner that would benefit [KCWW] in this forum." This Court may exercise general personal jurisdiction over KCWW.

### 2.    This Court Has Specific Jurisdiction Over Defendant

The determination of whether a court may exercise specific jurisdiction over an out-of-state defendant is a two-step process. First, the Court must decide whether New York law

---

[4] Should it be confirmed that KCGS is authorized to sue for infringement of KCWW's patents, Arquest will amend the complaint to name KCGS as a defendant. At the outset of this litigation, KCWW, as the sole assignee of the patents-in-suit according to the United States Patent & Trademark Office database, appeared to be the sole necessary party for the purpose of declaring the patents invalid, unenforceable and/or not infringed.

8

permits the exercise of specific jurisdiction over the defendant. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002)  If so, the Court must address whether the exercise of personal jurisdiction is consistent with constitutional due process. *Id.*

As explained below, KCWW is subject to specific jurisdiction in this district because its extensive conduct in this forum which gave rise to this suit, together with its close relationship with this forum through KCGS, satisfies the requirements of New York's long-arm statute and constitutional due process.

### a. New York's Long-Arm Statute Supports the Exercise of Personal Jurisdiction Over Defendant

KCWW is subject to personal jurisdiction under New York's long-arm statute because it transacted business in New York that gave rise to this litigation.  Under N.Y. C.P.L.R. § 302(a)(1), jurisdiction exists over a non-domiciliary defendant who "in person or through an agent . . . transacts any business within the state" and the cause of action arises out of the transactions. *See PDK Labs*, 103 F.3d at 1109.  Proof of a single act in New York is sufficient to confer personal jurisdiction, even if the defendant never physically entered New York, "so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Id.* (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 198-99, 522 N.E.2d 40, 43 (1988)).  "A cause of action arises out of defendant's New York transactions when it is 'sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business.'" *Id.* (quoting *Hoffritz*, 763 F.2d at 59).

KCWW transacted business in New York by means of six months of communications with Arquest's counsel in New York aimed at using the threat of a patent infringement suit to force Arquest to modify its products to Arquest's detriment. *See* Siff Decl. at ¶ 21.

In June 2007, KCWW's counsel purposefully projected itself into this district by reaching out to Arquest's New York counsel to threaten a patent infringement lawsuit. *See id.* at ¶ 2.  Over six months of negotiations followed between KCWW and Arquest's New York counsel during which KCWW exchanged at least 50 telephone calls, email messages and faxes on a regular and continuous basis. *See id.* at ¶ 21.  These communications were not merely aimed at settling a possible patent infringement suit – as KCWW is or should be aware that the patents-in-suit are invalid in any case – but to effectuate KCWW's strategy of using its patents as

9

leverage to force other diaper companies to modify their products to make them less attractive to consumers. These efforts were all aimed at counsel in New York.

KCWW also negotiated and executed eight Stand-Still Agreements through Arquest's New York counsel that forbade either party from instituting suit for a given period of time, and provided to KCWW an exclusive three-day window in which it could file the first suit in the forum of its choice. *See id.* at ¶¶ 5, 10. By contracting with Arquest, KCWW availed itself of the protections of the courts in this district while negotiating revisions to Arquest's products through its New York counsel.

The Second Circuit's decision in *PDK Labs* supports this Court's exercise of personal jurisdiction over KCWW. In that case, the out-of-state defendant used New York counsel to mount a three-month-long campaign to threaten a patent infringement action against the New York-based plaintiff and to solicit an investment in the defendant. *See PDK Labs*, 103 F.3d at 1106-09. The court found that this "persistent campaign" constituted business transacted in New York, and that the declaratory judgment arose from these New York contacts. *See id.* at p. 1109.

The court went on to distinguish the decision in *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757 (2d Cir. 1983),[5] upon which KCWW relies heavily in its brief. The court explained that the *Beacon* court did not exercise jurisdiction because only a single cease and desist letter had been sent into New York by the defendant, and the defendant's shipment of goods into New York were not the contacts out of which the declaratory judgment arose. *See id.* at n. 3. The court concluded that defendant's contacts with New York "differ[ed] in both quantity and degree from those deemed insufficient in *Beacon*." *Id.*

KCWW's contacts with New York in this case are far more extensive than those of the defendant in the *Beacon* case, and approach in quantity and degree those contacts of the defendant in the *PDK Labs* case. As in *PDK Labs*, KCWW projected itself into New York through a months-long campaign of telephone calls, emails, and faxes for the purpose of coercing Arquest into modifying its products within the context of settling patent infringement claims. *See* Siff Decl. at ¶ 21.

---

[5] KCWW cites *Beacon* for the proposition that defensive declaratory judgment actions are not typically cases New York courts link to § 302(a) jurisdiction. *See* KCWW's Brief at p. 6. The Second Circuit has since repeatedly dismissed this statement as based on dicta and relied on § 302(a) to exercise personal jurisdiction in declaratory judgment cases. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31-32 (2d Cir. 1996).

Moreover , KCWW transacted business in New York by negotiating and executing eight (8) Stand-Still Agreements through Arquest's New York counsel. These activities have a close nexus with this action because it was KCWW's decision to finally end the stand-still period that put Arquest in reasonable apprehension of suit. With the single exception that KCWW did not use a New York attorney to threaten and negotiate with Arquest, KCWW's contacts with New York are actually more extensive than those of the defendant in *PDK Labs*, and therefore support the exercise of specific jurisdiction over KCWW.

**b.    This Court's Exercise of Personal Jurisdiction Over Defendant Satisfies Constitutional Due Process**

In determining whether the exercise of personal jurisdiction over KCWW satisfies the requirements of due process, the Court must determine whether: (1) KCWW purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Breckenridge Pharma., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006).

The Federal Circuit has held that a defendant-licensor who sends cease and desist letters into a forum state, and also has a relationship with an exclusive licensee or distributor in that state that goes beyond mere royalty or cross-licensing payments, such as where both the licensor and licensee may litigate infringement cases, may be subject to personal jurisdiction consistent with constitutional due process requirements. *See Metabolite*, 444 F.3d at 1366.

For example, in *Metabolite*, the defendant-licensor sent cease and desist letters to several companies in Florida, where the defendant-licensor was not a resident and not subject to general jurisdiction. *See id.* at 1360-62. One of the alleged infringers instituted a declaratory judgment action in Florida. *See id.* at 1360. Although the cease and desist letter, on their own, were an insufficient basis for personal jurisdiction over the defendant-licensor in Florida, the court found that jurisdiction was appropriate because the defendant-licensor had availed itself to the privilege of conducting activities within Florida through it exclusive licensee operating in Florida. *See id.* at 1367.

The court found, after jurisdictional discovery, that defendant had entered into an exclusive license with the manufacturer and distributor of the patented products. *See id.* at 1359-1360, 1366. The licensee was not domiciled in Florida, but it conducted business there. *See id.* at 1366. The defendant-licensor granted its licensee the right to sue for patent infringement with

the defendant-licensor's consent, and both parties were often represented jointly by counsel. *Id.* at 1366-67. Under these circumstances, the court found that the exclusive license agreement created an ongoing relationship between the licensor and licensee sufficient to support personal jurisdiction. *See id.* at 1367.

Similarly, in *Genetic Implant Sys. v. Core-Vent Corp.*, 123 F.3d 1455 (Fed. Cir. 1997), the defendant-patent-owner in a declaratory judgment action which had sent cease and desist letters into the forum state was subject to personal jurisdiction through its relationship with its exclusive distributor operating, but not based, in the forum state. *See id.* at 1457-59. The court found that the appointment of a distributor is analogous to the grant of a patent license in that the patentee had given up the right to exclude the distributor from using the patent. *See id.* at 1458. As in a licensing situation, the patentee retained the right to maintain the patents and pursue claims for infringement of the patents. *See id.* at 1459. Finally, the patentee authorized its distributor to use its trademarks in marketing and distributing the products. *See id.*

Although Arquest does not currently have access to all of the parameters of the relationship between KCWW and KCGS, including any written agreements between the two affiliated entities, the publicly-available facts suggest an intimate relationship through which KCWW projects itself into this forum and fully satisfies the criteria for exercising personal jurisdiction according to the *Metabolite* and *Genetic Implant* decisions.

According to Huggies® brand diaper packaging, KCGS, a company registered to do business in New York, is the distributor of products in New York covered by patents owned by KCWW, including at least one of the patents-in-suit. This arrangement, according to the *Genetic Implant* court, is analogous to an exclusive license in the forum. KCWW has also given KCGS a license to use KCWW's trademarks and copyrighted packaging in connection with sales of the covered diapers, which further solidifies KCWW's relationship to this forum.

Additionally, based on the fact that KCGS is also a plaintiff in the second-filed action in Texas, it appears that KCWW has given KCGS permission to institute suits for infringement of KCWW's patents.[6] *See* Siff Decl. at ¶ 20. A review of the agreement between KCWW and KCGS could confirm this arrangement.

---

[6] Should it be confirmed that KCGS is authorized to sue for infringement of KCWW's patents, Arquest will amend the complaint to name KCGS as a defendant.

DOCSNY-292537

Thus, the facts available to Arquest indicate that KCWW has a sufficient contact with New York through KCGS to satisfy the first two prongs of the test for personal jurisdiction.

Moreover, KCWW's activities through KCGS highlight the fact that KCWW's reliance on *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998), is misplaced. In that case, the defendant's only contact with the forum was limited to cease and desist letters, "without more." *See Metabolite*, 444 F.3d at 1363 (discussing the holding in *Red Wing Shoe*). As already discussed, KCWW projects itself into this forum not just through a single correspondence with Arquest, but through a months-long campaign to coerce Arquest to change its diaper designs, and through KCGS's activities as KCWW's licensee and distributor.

The third prong of the due process analysis places the burden on the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Metabolite*, 444 F.3d at 1363 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985)). Fairness is evaluated with reference to the following five factors: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *See Metabolite*, 444 F.3d at 1367 (quoting *Burger King*, 471 U.S. at 477).

It is highly unlikely that KCWW will be able to meet the extremely high burden of making a compelling case that this Court's exercise of jurisdiction would be unfair for the following reasons: (1) the burden on KCWW in New York is no greater than it would be in its forum of choice, the Northern District of Texas, as KCWW's operations and its employees are located in Wisconsin, *see* Declaration of Charles Misun ("Misun Decl.") at ¶¶ 4-11; (2) Arquest's interest in obtaining convenient and effective relief is well-served by litigating in New York because Arquest's headquarters, and therefore, at least two of its contemplated witnesses, are located within 50 miles of the Court, *see* Rinaldi Decl. at ¶ 6, and the Southern District of New York is well-known as having extensive experience with patent matters; and (3) the Southern District has an interest in adjudicating the dispute because KCWW has directed its threats of a patent infringement action into this forum.

The fourth factor, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, does not weigh against jurisdiction in this forum, because a

DOCSNY-292537

lighter caseload in the Northern District of Texas does not mean that this matter will not be adjudicated efficiently in this forum. To the contrary, this Court appears ready and able to shepherd this case to trial quickly, as reflected in the December 18, 2007 Order Scheduling and Initial Pretrial Conference, which requires that discovery be completed within 180 days of the scheduling order. There is certainly no evidence that this Court's exercise of jurisdiction will cause inefficiencies that may deny KCWW its due process rights.

The fifth and final element, the shared interest of the several States in furthering fundamental substantive social policies, has been deemed insignificant in patent cases by the Federal Circuit, *see Metabolite*, 444 F.3d at 1368, and thus does not weigh in favor of denying jurisdiction in this forum.

For at least the foregoing reasons, this Court may exercise personal jurisdiction over KCWW consistent with due process.

**B.    This Court Should Retain Jurisdiction Over This Action**

**1.    Arquest's First-Filed Suit Should Continue in this Forum**

The Second Circuit adheres to the first-filed rule, which states that where proceedings involving the same parties and issues are pending simultaneously in different federal courts, the district in which the first action was filed should enjoin the prosecution of the second action unless there are special circumstances that justify giving priority to the second action. *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir. 1991) (citations and quotations omitted); *William Gulkin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 555 (S.D.N.Y. 2000). Special circumstances include a balance of convenience in favor of the second action, or where forum shopping alone motivated the choice of the forum for the first suit. *William Gulkin*, 407 F.2d at 178. Since this action was filed before the Texas action, and no special circumstances exist which justify giving priority to the Texas action, this Court should maintain jurisdiction over this action.

In this circuit, there is a strong presumption in favor of the forum of the first-filed suit. *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994). The first-filed rule "serve[s] the purposes of promoting efficiency and should not be disregarded lightly." *Id.* at 132. The party seeking to deviate from the rule has the burden of demonstrating that circumstances justifying an exception exist. *See Citigroup*, 97 F. Supp. 2d at 555-56.

DOCSNY-292537

Courts have found that special circumstances justifying an exception to the first-filed rule are present when the first suit constitutes an "anticipatory filing." *Citigroup*, 97 F. Supp. 2d at 556. Although KCWW does not admit that the first-filed rule controls, and thus does not argue this exception, its arguments against the legitimacy of Arquest's complaint, particularly Arquest's alleged use of this action as a "preemptive device," most closely approximate the anticipatory filing exception to the first-filed rule.

An improper anticipatory filing is "one made under the apparent threat of a presumed adversary filing the mirror image of that suit in another court." *Citigroup*, 97 F. Supp. 2d at 557 (quoting *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995)). As a result, "it is improper for a party to launch a *preemptive strike* by racing to the courthouse in his preferred forum before his adversary *has a chance to file their action in the forum of their choice*, and such a party should not benefit from the first-filed rule." *See* Citigroup, 97 F. Supp. 2d at 557 (citations omitted) (emphasis added).

The fact that Arquest filed a declaratory judgment action before KCWW filed its action does not render the action an anticipatory filing. *800-Flowers*, 860 F. Supp. at 132. "A party's reasonable apprehension of a legal controversy may be sufficient to satisfy the requirements of a justiciable controversy without rising to the level of a direct threat of imminent litigation." *Id.* If this were not so, "each time a party sought declaratory judgment in one forum, a defendant filing a second suit in a forum more favorable to defendant could always prevail under the anticipatory filing exception." *Id.*

An imminent threat of litigation which gives rise to an anticipatory filing may be found where negotiations between the parties have broken down, or threats of litigation have been made towards the declaratory judgment plaintiff. *See 800-Flowers*, 800 F. Supp. at 133-34.

Arquest's filing of this action was not an improper anticipatory filing that creates an exception to the first-filed rule because Arquest did not "race to the courthouse" under a direct threat of imminent litigation in order to preempt KCWW's choice of forum. Although Arquest may arguably have been under an imminent threat of suit during KCWW's exclusive three-day window to bring suit under the Stand-Still Agreement, Arquest was powerless to file a preemptive action during that period. In other words, Arquest did not, and could not, "race to the courthouse" to file this suit because the Stand-Still Agreement instituted by KCWW eliminated the "race to the courthouse." *See* Siff Decl. at ¶¶ 4-5. By securing an exclusive three-day

15

window in which it could file suit, KCWW ensured that it could file the first suit before Arquest–
if KCWW so chose.

Once the three-day window had closed and KCWW had waived its contractual right
to file the first suit in the forum of its choice, Arquest was no longer under imminent threat of
suit because it reasonably believed that if KCWW did not file suit during the three-day window,
it was unlikely to file suit immediately thereafter. *See* Siff Decl. at ¶ 13. Since Arquest was not
under direct threat of suit, and with negotiations continuing, Arquest did not file suit under a
threat of imminent suit.

Nevertheless, in the absence of a ninth Stand-Still Agreement and no global
settlement in place, Arquest remained under a reasonable apprehension of suit – if not an
*imminent suit* – in the days following the close of KCWW's exclusive three-day window, and
thus had every right to file this action to seek a judicial resolution of the controversy.

At the same time, KCWW knew that if it did not file the first suit during the three-day
window, Arquest had the right to subsequently file a declaratory judgment action to obtain a final
determination of the controversy. KCWW's decision not to file suit thus constituted a knowing
waiver of its contractual right to prevent Arquest from filing the first suit. *See generally Ontel
Prods.*, 899 F. Supp. at 1151 (discussing that a declaratory judgment action may keep its first-
filed status where a declaratory judgment defendant does not file suit promptly).

In a display of regret, KCWW and KCGS filed the Texas action, which is nothing
more than a mirror image suit in KCWW's chosen forum, on the very day it learned that Arquest
had filed this action, and *less than a week after it had decided not to file suit* during its three-day
exclusive window. *See* Siff Decl. at ¶ 16. The only reasonable explanation for KCWW's action
is that it filed the Texas action to create the appearance that Arquest had filed a preemptive
action, and thus manufacture a basis to transfer this action to Texas. Were the Court decline to
honor Arquest's first-filed status, it would effectively be creating for KCWW an exclusive
window to file suit of unlimited duration, thereby effectively imposing the absolute requirement
that any suit between the parties be filed in the forum of KCWW's choice. KCWW did not
bargain for this right, and the Court should not award it to KCWW to the detriment of Arquest.

Notably, even though it alleges that Arquest's filing was preemptive, KCWW
presents no facts suggesting that it had been planning to file suit before Arquest's filing.
KCWW does not allege that it was in the process of preparing its Texas action when Arquest

16

filed first, nor does it identify any change in circumstances – other than Arquest's filing – that led it to file suit less than a week after it declined to file during its three-day exclusive window.

KCWW also fails to explain why it did not merely file counterclaims in this action rather than file a new action in Texas. *Cf. Citigroup*, 97 F. Supp. 2d at 563 (noting that a defendant's filing of a new action in another forum rather than filing counterclaims in the first-filed action constitutes a tactical maneuver that weighs against transferring the action to the defendant's chosen forum). Thus, this Court should treat KCWW's Texas filing as a tactical maneuver designed solely to deprive Arquest of its first-filed status and choice of forum.

Though KCWW may argue that Arquest's action should not enjoy the benefit of the first-filed rule because it was filed only one day before the Texas action, the Court should nevertheless honor the first-filed rule because the Texas action was filed for the illegitimate purpose of undermining Arquest's forum choice and first-filed status. Were KCWW permitted to eliminate Arquest's first-filed status, then no declaratory judgment plaintiff would ever get the benefit of its chosen forum if the defendant quickly files a mirror-image case in its forum of choice. Just as the court has counseled against finding that a declaratory judgment action is necessarily an anticipatory filing when the defendant files a mirror-image filing soon thereafter, *see 800-Flowers*, 860 F. Supp. at 132, this Court should not deprive Arquest of its first-filed status in view of KCWW's tactical gamesmanship.

Contrary to KCWW's argument, Arquest did not file this action as a negotiating tactic. Arquest's counsel, Brian Siff, explains in his declaration that this action was filed for a legitimate reason: Arquest believed that a global settlement of all of the issues between the parties was unlikely, as negotiations as to at least one of the patents-in-suit and at least one of the accused products was at an impasse. *See* Siff Decl. at ¶¶ 16-17.

Although KCWW correctly points out that Arquest's counsel referred to the complaint as a "placeholder," KCWW improperly suggests that Arquest withheld service as a tactical measure. The fact is that Arquest withheld service of the complaint in an attempt to determine whether any of the disputes as to which the parties had defined possible settlement criteria could be removed from the complaint despite the failure to reach a global settlement. *See id.* at ¶ 16. Possibly narrowing the issues, patents and/or products would save both parties and this Court time, effort and money. Arquest's counsel believed that refraining from active

17

litigation while the parties attempted to reduce the scope of the litigation was a show of good faith – not an attempt to use this action as leverage. *See id.* at ¶¶ 16-17.

The decision in *EMC Corp. v. Norand Corp.*, 89 F.3d 807 (Fed. Cir. 1996), relied upon by KCWW, is distinguishable from this case because in *EMC*, the complaint was filed in an attempt to interfere with the ability of defendant, who did not compete with plaintiff, to license its patent to the plaintiff's competitors. *See id.* at 815. Following this admittedly defensive maneuver, plaintiff intimated to defendant that the filing of the complaint may lead to "more meaningful discussions" with defendant. *See id.* The district court in that case had little choice but to find that plaintiff had filed the complaint as a negotiating tactic.

Here, Arquest did not file the complaint as a negotiating ploy, but rather to seek resolution of KCWW's infringement allegations. Arquest never held the absurd belief that filing a complaint against company such as KCWW, with the resources and support of a multi-billion-dollar corporation behind it, would somehow pressure it into settlement on Arquest's terms. *See* Siff Decl. at ¶ 17. As the much smaller company, it is obviously in Arquest's interests to reduce the scope of this litigation, and its attempt to do so should not be viewed as inconsistent with the purpose of the Declaratory Judgment Act..

For these reasons, this Court should retain jurisdiction over Arquest's first-filed action and reject KCWW's attempt to use a tactical second-filed action to preempt Arquest's case.

### 2.    This District Is the Most Appropriate Forum for this Dispute

This court should not transfer this case to the Northern District of Texas because KCWW has failed to make a clear-cut showing that venue in this district is inappropriate.

A district court may transfer venue to another court "for the convenience of parties and witnesses, in the interest of justice." *Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d. 367, 394 (S.D.N.Y. 2006) (citing 28 U.S.C. § 1404(a)). The policy behind section 1404(a) is to "prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Id.* (citations omitted).

The defendant bears the burden of establishing that plaintiff's choice of forum is inappropriate, and must make a clear-cut showing that transfer is in the best interests of the litigation. *Id.* at 394-95 (citations omitted). To meet this burden, the defendant must list the

DOCSNY-292537

evidence and witnesses on which it intends to rely that are located in the transferee district. *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp. 62, 66-67 (S.D.N.Y. 1993). "The plaintiff's choice of forum is accorded great weight and must be deferred to unless the balance of conveniences strongly favors defendants: '[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Editorial Musical*, 829 F. Supp. at 66 (quoting *Lipton v. Nature Co.*, 781 F. Supp. 1032, 1036 (S.D.N.Y. 1992)).

Courts in the Second Circuit consider numerous factors in determining the balance of convenience and fairness on a motion to transfer including: (1) the locus of the operative facts; (2) convenience of the parties; (3) the convenience of the witnesses; (4) the location of relevant documents and relative ease of proof; (5) the relative means of the parties; (6) the availability of process to compel attendance of unwilling witnesses; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances. *American Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006) (citations omitted.).

The first element, the locus of operative facts, is traditionally an important factor and, in patent cases, usually lies where the allegedly infringing product was designed, developed and produced. *International Securities Exch., LLC v. Chicago Bd. Options Exch., Inc.*, 2007 WL 2319128 at * 3 (S.D.N.Y. 2007) (citations and quotations omitted). In this case, Arquest's diapers are designed and developed in New Jersey (within 50 miles of this courthouse) and Arkansas and are produced in Arkansas. *See* Rinaldi Decl. at ¶ 4. Thus, this factor does not favor transfer to the Northern District of Texas.

The second element, convenience of the parties, does not weigh in favor transfer. While KCWW is based in the Northern District of Texas, it does not claim to have any operations in that district. *See* Misun Decl. at ¶¶ 4-11. KCWW's national counsel are located in Chicago, Illinois, and its intellectual property counsel are located in Wisconsin and Georgia. *See id.* at ¶ 11. While KCWW's elected officers are located in the Northern District of Texas, KCWW does not allege that these individuals would have any involvement in this suit.

Maintaining this action in this district would be convenient to Arquest, whose offices are located less than 50 miles from the courthouse, and whose lawyers are located in this district. *See* Rinaldi Decl. at ¶ 6. Therefore, whatever convenience would be enjoyed by KCWW by

19

transferring this case to Texas would be offset by at least a proportionate inconvenience to Arquest. "Where a transfer would merely switch the burden of inconvenience from one party to the other, this factor is essentially neutral." *American Steamship Owners Mutual Prot. & Indem. Ass'n v. LaFarge North Amer., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) (quotation omitted).

The third element, the convenience of the witnesses, weighs in favor of Arquest. KCWW has identified only a single witness situated in the Northern District of Texas, *see* Declaration of Vicki Margolis ("Margolis Decl.") at ¶ 18, and it is unclear whether the witness will be called at trial. To the contrary, Arquest has identified two potential witnesses, Matthew Rinaldi and Reid Macfarlan, who Arquest contemplates will be called to provide testimony, and who will be greatly inconvenienced if required to do so in Texas. *See* Siff Decl. at ¶ 22. Accordingly, this factor weighs against transfer.

The fourth factor, the location of documents and relative ease of proof, does not weigh in favor of KCWW. KCWW did not submit any evidence as to where its documents and evidence are located, and thus has failed to carry its burden of proof. *See Editorial Musical*, 829 F. Supp. at 66-67. Arquest's documents are located in New Jersey and Arkansas. *See* Rinaldi Decl. at ¶ 5. In any event, this factor is largely neutral given that records are easily portable. *American Eagle*, 457 F. Supp. 2d at 478.

The fifth factor, the relative means of the parties, weighs against transfer to Texas. It is well-known and beyond dispute that KCWW is a subsidiary of a multi-billion dollar public corporation and Arquest is a privately-held company that is merely a fraction of the size of Kimberly-Clark. *See* Rinaldi Decl. at ¶ 2. As such, KCWW's far superior financial wherewithal and internal corporate resources, including teams of in-house lawyers, counsels against transfer.

The sixth and seventh factors, the availability of process to compel attendance of unwilling witnesses and the forum's familiarity with the governing law, do not weigh in favor of transfer. KCWW has presented no evidence that process to compel attendance of unwilling witnesses is more available in Texas than New York, and will not be able to show that judges in the Northern District of Texas are more familiar with the patent laws than the highly-esteemed judges of this forum.

DOCSNY-292537

The eighth factor, the weight accorded to plaintiff's choice of forum, disfavors transfer. As already shown above, the facts of this case do not favor disturbing the "strong presumption in favor of the forum of the first-filed suit." *800-Flowers*, 860 F. Supp. at 131.

Finally, the ninth factor, trial efficiency and the interests of justice based on the totality of the circumstances, does not favor transfer. Defendant's data regarding the relative docket sizes is counterbalanced by KCWW's needlessly duplicative filing of a mirror-image suit in the Northern District of Texas rather than filing counterclaims in this court. *See Citigroup*, 97 F. Supp. 2d at 563. According to the *Citigroup* court, the interests of justice do not favor transfer under these circumstances.

None of the nine factors examined by courts in this circuit favor transfer of this case to the Northern District of Texas. At least three factors weigh heavily against transfer, and the remaining factors are neutral. Therefore, KCWW has not met its burden of presenting clear-cut evidence that the balance of conveniences strongly favors transfer, and this Court should deny KCWW's motion for transfer.[7]

## V.    CONCLUSION

For the foregoing reasons, KCWW's motion to dismiss or, in the alternative, dismiss or transfer this action should be denied in its entirety.

Dated: New York, New York
      February 19, 2008

DICKSTEIN SHAPIRO, LLP

By: _Richard LaCava_

Brian D. Siff (BS 6135)
Richard LaCava (RL 1671)
Peter Lambrianakos (PL 5075)
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

Attorneys for Plaintiff, Arquest, Inc.

---

[7] Arquest has filed its own motion to dismiss KCWW's and KCGS's second-filed action in the Northern District of Texas. *See* Siff Decl. at ¶ 16; Ex. J.

21