Brian D. Siff (BS 6135)
Richard LaCava (RL 1671)
Peter Lambrianakos (PL 5075)
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 277-6500
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| ARQUEST, INC., | : | |
| Plaintiff, | : | Civ. Action No.: 1:07-cv-11202 (CM) |
| | : | |
| | : | ECF Case |
| v. | : | |
| | : | Jury Demanded |
| KIMBERLY-CLARK WORLDWIDE, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF BRIAN D. SIFF IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER**

I, Brian D. Siff, Esq., hereby declare as follows:

1.    I am an attorney-at-law duly admitted to practice before this Court, and a partner in the law firm of Dickstein Shapiro LLP, attorneys for plaintiff, Arquest, Inc. ("Arquest"). I submit this declaration in opposition to the motion of defendant, Kimberly-Clark Worldwide, Inc. ("KCWW") to dismiss or, in the alternative, to transfer this case. I have personal knowledge of the matters set forth in this declaration through my involvement in negotiations with KCWW personnel, the filing of this matter, and my review of the file kept by my firm in this case.

2.    On or about June 28, 2007, I received a telephone call in my office in New York City from Kyle K. Kappes, in-house counsel at KCWW in Neenah, Wisconsin. Mr. Kappes notified me that KCWW believed that certain Arquest products infringed KCWW's patents. Before providing me with information regarding KCWW's patents and Arquest's accused

products, Mr. Kappes stated that KCWW wished to enter into a stand-still agreement that prohibited either party from commencing litigation so that the parties could negotiate a settlement.

3.      On or about July 2, 2007, I received a draft stand-still agreement from Mr. Kappes by e-mail at my office in New York City.  A true and correct copy of the draft stand-still agreement is attached as Exhibit A.  The draft stand-still agreement provided that KCWW was prohibited from filing suit until August 2, 2007, and Arquest was prohibited from filing suit until August 9, 2007.  Thus, KCWW sought to obtain a one-week exclusive window in which it could file the first suit, with no restriction on KCWW's choice of forum, if no settlement of KCWW's infringement allegations were reached and no extension of the stand-still agreement were executed.

4.      On or about July 9, 2007, I telephoned Mr. Kappes in Wisconsin to discuss the form of stand-still agreement.  I informed Mr. Kappes that Arquest did not wish to give KCWW an exclusive window in which it could sue Arquest should negotiations between the parties fail to result in a settlement.  Mr. Kappes responded that KCWW wanted an exclusive window because KCWW could have sued Arquest without ever having brought the alleged infringement issues to Arquest's attention.  Thus, KCWW wanted to avoid the possibility that Arquest could sue first.

5.      On or about July 17, 2007, Mr. Kappes and I finalized the terms of the first Stand-Still Agreement, which was finally executed on July 18, 2007.  A true and correct copy of the first Stand-Still Agreement is attached as Exhibit B.  The first Stand-Still Agreement gave KCWW a three-day exclusive window in which it could file the first suit without any restriction on KCWW's choice of forum.

DOCSNY-293011

6. After the first Stand-Still Agreement was signed, I had numerous telephone conversations with Mr. Kappes and Michael Kubicki, another in-house lawyer for KCWW in Neenah, Wisconsin, in late July to negotiate a settlement of KCWW's allegations. It was during these conversations that KCWW informed Arquest of the three patents that KCWW thought were infringed: U.S. Patent Nos. 5,286,543; 5,496,298; and 6,307,119.

7. Negotiations continued by telephone throughout August, September, October and November 2007 between KCWW's counsel in Wisconsin and Arquest's counsel in New York. During these ongoing negotiations successive stand-still agreements were executed by the parties, thereby preserving KCWW's right to file first in the forum of its choice.

8. As negotiations continued and the Stand-Still Agreement in effect at a given time was near expiration, I would normally inquire whether KCWW was willing to execute an additional consecutive Stand-Still Agreement so the parties could continue to negotiate settlement without litigation. At no time was Arquest unwilling to execute a further Stand-Still Agreement. While Ms. Margolis (in her declaration) is technically correct that KCWW could have filed suit on August 17, 2007 and September 13, 2007, the parties had already verbally agreed as of those dates to execute a new Stand-Still Agreement. Thus, on August 17 or September 13, Arquest was confident that a new Stand-Still Agreement was going to be signed, and therefore, Arquest did not believe it was under a threat of a lawsuit . In any event, Ms. Margolis was not involved in the negotiations during this time frame.

9. On November 7, 2007, Ms. Margolis first became involved in the negotiations. That day, during a telephone conference with Mr. Kappes and me, Ms. Margolis, who was identified as litigation counsel, inquired whether Arquest would agree to submit this dispute to binding arbitration rather than litigate this matter in court. Thus, it was when Ms. Margolis became involved in the negotiations that the possibility of a lawsuit increased.

DOCSNY-293011

10.    Negotiations between Mr. Kappes and Ms. Margolis (and then only Ms. Margolis) in Wisconsin and me in New York City continued thereafter. On November 16, 2007, I inquired with Ms. Margolis whether KCWW would agree to enter into an eighth Stand-Still Agreement. Ms. Margolis agreed, and I sent her by e-mail a draft of what became the final Stand-Still Agreement. True and correct copies of the second through eighth Stand-Still Agreements are attached as Exhibits C through I, respectively. Again, negotiations continued.

11.    On December 6, 2007, with the eighth Stand-Still Agreement set to expire, I again inquired with Ms. Margolis whether KCWW would agree to enter into a ninth Stand-Still Agreement. Ms. Margolis said that KCWW was not willing to enter into another Stand-Still Agreement.

12.    Given that KCWW would not commence negotiations with Arquest in July 2007 without a stand-still agreement in place, thereby preserving its right to sue Arquest first (in the forum of its choice) its refusal to enter into a ninth Stand-Still Agreement was a clear sign to Arquest that KCWW may file suit even if negotiations continued. At this time, Arquest was still committed to achieving a global settlement for all three of the patents at issue.

13.    Arquest fully expected that KCWW would file suit during the exclusive three-day window because KCWW had fought for the right to do so and thereby avoid a "race to the courthouse." Although Arquest was not served with a complaint on December 7 or December 10, Arquest determined that if KCWW had not filed suit, it may not file suit immediately thereafter, but would use the looming threat of a lawsuit as leverage in negotiations with Arquest.

14.    Arquest decided that it would file a declaratory judgment action in the Southern District of New York because it believed that a global settlement of all the issues was unlikely. In fact, certain issues had reached an impasse. In particular, the parties could not (and have not

4

to date) resolved issues involving Arquest's training pants in view of KCWW's U.S. Patent No. 5,286,543.

15.    Although Arquest had decided to file this action, negotiations continued because, for the benefit of both parties, Arquest hoped to settle as many issues as possible to limit the scope and expense of any lawsuit.

16.    On December 12, 2007 Arquest filed this action in the Southern District on New York. Arquest did not serve the complaint on KCWW. The following day, December 13, 2007, I called Kyle Kappes and Vicki Margolis of KCWW to inform them that Arquest had filed the complaint, but did not intend to immediately serve it on KCWW to show good faith by refraining from active litigation while the parties worked to limit the scope of the case as much as possible. In particular, I referred to the complaint as a "placeholder" because the complaint contained counts regarding all of the products and patents that the parties had been negotiating as part of the global settlement, even though the parties had reached a verbal understanding of the parameters for settlement of certain products and/or patents. Thus, it was unclear at the time the complaint was filed whether KCWW would agree to remove from the case claims of infringement with respect to specific products or patents even though a global settlement had not been reached. If KCWW did not agree to settle with respect to specific products or patents that had been resolved as part of the global settlement, then those products and patents would continue to be part of the complaint. In response to my call, KCWW filed an immediate suit in the Northern District of Texas that same day. Arquest has a motion to dismiss this second-filed action pending before the court in the Northern District of Texas, a copy of which is attached hereto as Exhibit J.

5

17.     Contrary to KCWW's arguments, Arquest did not file this suit to gain a tactical advantage in negotiations, partake in "gamesmanship," or somehow coerce KCWW, a subsidiary of a multi-billion dollar corporation, into settling with a much smaller company like Arquest.

18.     KCWW has strong contacts with the Southern District of New York. According to Huggies® diaper packaging on sale in this district, KCWW distributes its products in New York State through a related entity, Kimberly-Clark Global Sales, Inc. ("KCGS"), which is registered to do business in New York. The product packaging states that the products are covered by several patents assigned to KCWW, including U.S. Patent Nos. 5,286,543 and 6,307,119, which are at issue in this case. The product packaging also states that KCWW licenses its trademarks and copyrights to KCGS for use in connection with these sales. True and correct copies of packaging for Huggies Supreme ® diapers and Huggies Pull-Ups ® training pants purchased in this district are attached hereto as Exhibits K and L, respectively.

19.     Since KCWW is the sole entity shown in the United States Patent & Trademark Office's database as an assignee of any of the patents-in-suit, it appears that KCGS has licensed the patents-in-suit from KCWW for the purpose of distributing products in New York covered by KCWW's patents.

20.     Notably, even though KCWW is the sole assignee of the patents-in-suit according to the United States Patent & Trademark Office, both KCWW and KCGS are plaintiffs in the Northern District of Texas action. This would indicate that KCWW has given authority to KCGS to enforce the patents-in-suit. Otherwise, KCGS would not have standing to sue for patent infringement.

21.     KCWW also projected itself into this forum for the purpose of negotiating a settlement of the infringement issues and negotiating modifications to Arquest's products. KCWW initiated contact with Arquest through its counsel in New York in June 2007; negotiated

DOCSNY-293011

the first Stand-Still Agreement with New York counsel; negotiated seven additional Stand-Still

Agreements with New York counsel; negotiated numerous issues relating to the infringement of

KCWW patents with New York counsel; discussed revisions to Arquest's diapers and training

pants; negotiated verbal settlement frameworks for certain discrete issues of alleged

infringement; and, in connection with these efforts, exchanged at least 50 telephone calls, e-mail

messages and faxes on a regular and continuous basis with Arquest's counsel in New York.

     22.    Arquest contemplates that Matthew Rinaldi, the President and Chief Operating

Officer of Arquest, and Reid Macfarlan, the Vice President of Marketing of Arquest, would

likely be called as witnesses in any trial to testify as to design issues and damages.

     23.    Based on the foregoing facts and the arguments presented in Arquest's brief,

KCWW's motion to dismiss, or in the alternative, to dismiss or transfer this case, should be

denied.

24.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed in New York, New York, on this 19th day of February, 2008.

_____
Brian D. Siff

DOCSNY-293011

# EXHIBIT A

July 2, 2007

**VIA E-MAIL**

Brian D. Siff, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
1177 Avenue
New York, NY 10036-2714

      Re:  Arquest IP Matter

Dear Brian:

      As we recently discussed, Kimberly-Clark ("K-C") wishes to discuss a handful of specific intellectual property matters with Arquest, Inc. ("Arquest"). K-C believes that these issues can be amicably resolved without the need for litigation.  However, following the Supreme Court's decision in *MedImmune, Inc. v. Genetech, Inc.* (2007) and in subsequent decisions such as *SanDisk Corp. v. STMicroelectronics* (Fed. Cir. 2007), K-C believes that it is in both K-C's and Arquest's interests that the parties affirmatively agree to refrain from commencing litigation for a brief period of time.  In this way, the parties can have a full and frank discussion of the issues in an effort to come to a resolution without resort to litigation.

      Accordingly, K-C proposes that each party agree to the following terms via execution of this letter agreement:

- K-C (and its subsidiaries and affiliates) will not commence litigation against Arquest in connection with any intellectual property matter prior to August 2, 2007;

- Arquest (and its subsidiaries and affiliates) will not commence litigation against any K-C entity in connection with any intellectual property matter, including but not limited to any claim for a Declaratory Judgment, prior to August 9, 2007; and

- no information exchanged, discussed, or otherwise communicated by K-C to Arquest, including but not limited to allegations of infringement of specific K-C patents, shall form the basis of or be referenced in any action, including but not limited to any claim for a Declaratory Judgment, brought by Arquest against K-C at any time.

Please acknowledge Arquest's agreement to the above by having this letter signed below on behalf of Arquest and returning a fully-executed copy to me.

Very truly yours,


Kyle K. Kappes


Agreed to and Accepted by:

KIMBERLY-CLARK WORLDWIDE, INC.          ARQUEST, INC.


By: _____      By: _____

Title: _____      Title: _____

# EXHIBIT B

## STAND-STILL AGREEMENT

This Stand-Still Agreement, effective as of the date of execution by both parties (the "Effective Date"), is by and between KIMBERLY-CLARK WORLDWIDE, INC., a Delaware Corporation having a principal place of business at 351 Phelps Drive, Irving, TX 75038 (hereinafter referred to as "K-C") and ARQUEST INC., an Arkansas Corporation having a principal place of business at 101 Interchange Plaza, Cranbury, NJ 08512 (hereinafter referred to as "ARQUEST"). K-C and ARQUEST, which definitions include all parents, affiliates and subsidiary companies, will be jointly referred to as the "Parties."

WHEREAS, the Parties wish to discuss intellectual property matters;

NOW THEREFORE, in consideration of the promises, mutual covenants and agreements contained herein, the parties agree as follows:

- K-C will not commence litigation against Arquest in connection with any intellectual property matter prior to 30 days after the Effective Date of this Agreement;

- Arquest will not commence litigation against any K-C entity in connection with any intellectual property matter prior to 33 days after the Effective Date of this Agreement;

- This Agreement may be extended at any time by the execution of additional stand-still agreements signed by the parties; and

- All discussions, including any exchange of information and/or documents, between Arquest and K-C are subject to Federal Rules of Evidence, Rule 408.

IN WITNESS WHEREOF, the Parties involved have caused this Stand-Still Agreement to be executed by their duly authorized representatives.

| ARQUEST, INC. | KIMBERLY-CLARK WORLDWIDE, INC. |
|---|---|
| By: _____ | By: _____ |
| Title: _Presilent_ | Title: _V.P. + Chief Counsel - I.P. + Innovation_ |
| Date: _7/18/07_ | Date: _7-17-07_ |

DOCSNY-256421v01

# EXHIBIT C

# STAND-STILL AGREEMENT

This Stand-Still Agreement, effective as of the date of execution by both parties (the "Effective Date"), is by and between KIMBERLY-CLARK WORLDWIDE, INC., a Delaware Corporation having a principal place of business at 351 Phelps Drive, Irving, Texas 75038 (hereinafter referred to as "K-C") and ARQUEST INC., an Arkansas Corporation having a principal place of business at 101 Interchange Plaza, Cranbury, NJ 08512 (hereinafter referred to as "ARQUEST"). K-C and ARQUEST, which definitions include all associated, affiliates and subsidiary companies, will be jointly referred to as the "Parties."

WHEREAS, the Parties wish to discuss intellectual property matters;

NOW THEREFORE, in consideration of the promises, mutual covenants and agreements contained herein, the parties agree as follows;

- K-C will not commence litigation against Arquest in connection with any intellectual property matter prior to 14 days after the Effective Date of this Agreement;

- Arquest will not commence litigation against any K-C entity in connection with any intellectual property matter prior to 17 days after the Effective Date of this Agreement;

- This Agreement may be extended at any time by the execution of additional stand-still agreements signed by the parties; and

- All discussions, including any exchange of information and/or documents, between Arquest and K-C are subject to Federal Rules of Evidence, Rule 408.

IN WITNESS WHEREOF, the Parties involved have caused this Stand-Still Agreement to be executed by their duly authorized representatives.

ARQUEST, INC.

By: _____

Title: _Personal Cou_____

Date: _8/17/07_____

KIMBERLY-CLARK WORLDWIDE, INC.

By: _____

Title: _V.P. + chief Caunsel - I.P. + Innovation_

Date: _8-20-07_____

DOCSNY-256421v01

# EXHIBIT D

# STAND-STILL AGREEMENT

This Stand-Still Agreement, effective as of the date of execution by both parties (the "Effective Date"), is by and between KIMBERLY-CLARK WORLDWIDE, INC., a Delaware Corporation having a principal place of business at 351 Phelps Drive, Irving, Texas 75038 (hereinafter referred to as "K-C") and ARQUEST INC., an Arkansas Corporation having a principal place of business at 101 Interchange Plaza, Cranbury, NJ 08512 (hereinafter referred to as "ARQUEST"). K-C and ARQUEST, which definitions include all associated, affiliates and subsidiary companies, will be jointly referred to as the "Parties."

WHEREAS, the Parties wish to discuss intellectual property matters;

NOW THEREFORE, in consideration of the promises, mutual covenants and agreements contained herein, the parties agree as follows:

• K-C will not commence litigation against Arquest in connection with any intellectual property matter prior to 14 days after the Effective Date of this Agreement;

• Arquest will not commence litigation against any K-C entity in connection with any intellectual property matter prior to 17 days after the Effective Date of this Agreement;

• This Agreement may be extended at any time by the execution of additional stand-still agreements signed by the parties; and

• All discussions, including any exchange of information and/or documents, between Arquest and K-C are subject to Federal Rules of Evidence, Rule 408.

IN WITNESS WHEREOF, the Parties involved have caused this Stand-Still Agreement to be executed by their duly authorized representatives.

ARQUEST, INC.

By: _____

Title: _____

Date: _____5/30/07_____

KIMBERLY-CLARK WORLDWIDE, INC.

By: _____

Title: V.P. and chief Counsel - I.P. & Innovation

Date: __8/29/07__

# EXHIBIT E

## STAND-STILL AGREEMENT

This Stand-Still Agreement, effective as of the date of execution by both parties (the "Effective Date"), is by and between KIMBERLY-CLARK WORLDWIDE, INC., a Delaware Corporation having a principal place of business at 351 Phelps Drive, Irving, Texas 75038 (hereinafter referred to as "K-C") and ARQUEST INC., an Arkansas Corporation having a principal place of business at 101 Interchange Plaza, Cranbury, NJ 08512 (hereinafter referred to as "ARQUEST"). K-C and ARQUEST, which definitions include all associated, affiliates and subsidiary companies, will be jointly referred to as the "Parties."

WHEREAS, the Parties wish to discuss intellectual property matters;

NOW THEREFORE, in consideration of the promises, mutual covenants and agreements contained herein, the parties agree as follows:

- K-C will not commence litigation against Arquest in connection with any intellectual property matter prior to 14 days after the Effective Date of this Agreement;

- Arquest will not commence litigation against any K-C entity in connection with any intellectual property matter prior to 17 days after the Effective Date of this Agreement;

- This Agreement may be extended at any time by the execution of additional stand-still agreements signed by the parties; and

- All discussions, including any exchange of information and/or documents, between Arquest and K-C are subject to Federal Rules of Evidence, Rule 408.

IN WITNESS WHEREOF, the Parties involved have caused this Stand-Still Agreement to be executed by their duty authorized representatives.

ARQUEST, INC.

By: _____

Title: _Personaly_

Date: _9/14/07_

KIMBERLY-CLARK WORLDWIDE, INC.

By: _____

Title: _V.P. and Chief Counsel- I.P. & Innovation_

Date: _9-14-07_

# EXHIBIT F

## STAND-STILL AGREEMENT

This Stand-Still Agreement, effective as of the date of execution by both parties (the "Effective Date"), is by and between KIMBERLY-CLARK WORLDWIDE, INC., a Delaware Corporation having a principal place of business at 351 Phelps Drive, Irving, Texas 75038 (hereinafter referred to as "K-C") and ARQUEST INC., an Arkansas Corporation having a principal place of business at 101 Interchange Plaza, Cranbury, NJ 08512 (hereinafter referred to as "ARQUEST"). K-C and ARQUEST, which definitions include all associated, affiliates and subsidiary companies, will be jointly referred to as the "Parties."

WHEREAS, the Parties wish to discuss intellectual property matters;

NOW THEREFORE, in consideration of the promises, mutual covenants and agreements contained herein, the parties agree as follows:

* K-C will not commence litigation against Arquest in connection with any intellectual property matter prior to 14 days after the Effective Date of this Agreement;

* Arquest will not commence litigation against any K-C entity in connection with any intellectual property matter prior to 17 days after the Effective Date of this Agreement;

* This Agreement may be extended at any time by the execution of additional stand-still agreements signed by the parties; and

* All discussions, including any exchange of information and/or documents, between Arquest and K-C are subject to Federal Rules of Evidence, Rule 408.

IN WITNESS WHEREOF, the Parties involved have caused this Stand-Still Agreement to be executed by their duly authorized representatives.

ARQUEST, INC.                          KIMBERLY-CLARK WORLDWIDE, INC.

By: _____            By: _____

Title: _Precident_                     Title: _V.P. + chief Counsel - I.P. + Innovation_

Date: _9/28/07_                        Date: _9/28/07_

DOCSNY-256421v01

EXHIBIT G

## STAND-STILL AGREEMENT

This Stand-Still Agreement, effective as of the date of execution by both parties (the "Effective Date"), is by and between KIMBERLY-CLARK WORLDWIDE, INC., a Delaware Corporation having a principal place of business at 351 Phelps Drive, Irving, Texas 75038 (hereinafter referred to as "K-C") and ARQUEST INC., an Arkansas Corporation having a principal place of business at 101 Interchange Plaza, Cranbury, NJ 08512 (hereinafter referred to as "ARQUEST"). K-C and ARQUEST, which definitions include all associated, affiliates and subsidiary companies, will be jointly referred to as the "Parties."

WHEREAS, the Parties wish to discuss intellectual property matters;

NOW THEREFORE, in consideration of the promises, mutual covenants and agreements contained herein, the parties agree as follows:

• K-C will not commence litigation against Arquest in connection with any intellectual property matter prior to 14 days after the Effective Date of this Agreement;

• Arquest will not commence litigation against any K-C entity in connection with any intellectual property matter prior to 17 days after the Effective Date of this Agreement;

• This Agreement may be extended at any time by the execution of additional stand-still agreements signed by the parties; and

• All discussions, including any exchange of information and/or documents, between Arquest and K-C are subject to Federal Rules of Evidence, Rule 408.

IN WITNESS WHEREOF, the Parties involved have caused this Stand-Still Agreement to be executed by their duly authorized representatives.

ARQUEST, INC.                          KIMBERLY-CLARK WORLDWIDE, INC.

By: _____            By: _____

Title: _President_____            Title: _V.P. + Chief Counsel - I.P. + Innovation_

Date: _10/18/07_____             Date: _10/19/07_____

DOCSNY-256421v01

# EXHIBIT H

## STAND-STILL AGREEMENT

This Stand-Still Agreement, effective as of the date of execution by both parties (the "Effective Date"), is by and between KIMBERLY-CLARK WORLDWIDE, INC., a Delaware Corporation having a principal place of business at 351 Phelps Drive, Irving, Texas 75038 (hereinafter referred to as "K-C") and ARQUEST INC., an Arkansas Corporation having a principal place of business at 101 Interchange Plaza, Cranbury, NJ 08512 (hereinafter referred to as "ARQUEST"). K-C and ARQUEST, which definitions include all associated, affiliates and subsidiary companies, will be jointly referred to as the "Parties."

WHEREAS, the Parties wish to discuss intellectual property matters;

NOW THEREFORE, in consideration of the promises, mutual covenants and agreements contained herein, the parties agree as follows:

- K-C will not commence litigation against Arquest in connection with any intellectual property matter prior to 14 days after the Effective Date of this Agreement;

- Arquest will not commence litigation against any K-C entity in connection with any intellectual property matter prior to 17 days after the Effective Date of this Agreement;

- This Agreement may be extended at any time by the execution of additional stand-still agreements signed by the parties; and

- All discussions, including any exchange of information and/or documents, between Arquest and K-C are subject to Federal Rules of Evidence, Rule 408.

IN WITNESS WHEREOF, the Parties involved have caused this Stand-Still Agreement to be executed by their duly authorized representatives.

ARQUEST, INC.                     KIMBERLY-CLARK WORLDWIDE, INC.

By: _____ 11/1/07    By: _____

Title: _President_                Title: _V.P. and chief Counsel - IP + Innovation_

Date: _____            Date: _11-2-07_

DOCSNY-256421v01

# EXHIBIT I

# STAND-STILL AGREEMENT

This Stand-Still Agreement, effective as of the date of execution by both parties (the "Effective Date"), is by and between KIMBERLY-CLARK WORLDWIDE, INC., a Delaware Corporation having a principal place of business at 351 Phelps Drive, Irving, Texas 75038 (hereinafter referred to as "K-C") and ARQUEST INC., an Arkansas Corporation having a principal place of business at 101 Interchange Plaza, Cranbury, NJ 08512 (hereinafter referred to as "ARQUEST"). K-C and ARQUEST, which definitions include all associated, affiliates and subsidiary companies, will be jointly referred to as the "Parties."

WHEREAS, the Parties wish to discuss intellectual property matters;

NOW THEREFORE, in consideration of the promises, mutual covenants and agreements contained herein, the parties agree as follows:

- K-C will not commence litigation against Arquest in connection with any intellectual property matter prior to 21 days after the Effective Date of this Agreement;

- Arquest will not commence litigation against any K-C entity in connection with any intellectual property matter prior to 24 days after the Effective Date of this Agreement;

- This Agreement may be extended at any time by the execution of additional stand-still agreements signed by the parties; and

- All discussions, including any exchange of information and/or documents, between Arquest and K-C are subject to Federal Rules of Evidence, Rule 408.

IN WITNESS WHEREOF, the Parties involved have caused this Stand-Still Agreement to be executed by their duty authorized representatives.

ARQUEST, INC.                                    KIMBERLY-CLARK WORLDWIDE, INC.

By: _____                             By: _____

Title: _Presand ; Coo_                           Title: _Vice-President and Chief Counsel I.P. & Innovation_

Date: _11/16/07_                                 Date: _11-16-07_

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KIMBERLY-CLARK WORLDWIDE INC. AND KIMBERLY-CLARK GLOBAL SALES, INC<br><br>　　　PLAINTIFFS,<br><br>v.<br><br>ARQUEST, INC.,<br><br>　　　DEFENDANT. | § § § § § § § § § § § | CIVIL ACTION NO. 3-07-CV-02078 |

## DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO STAY

Date: February 4, 2008.

Samuel F. Baxter
Texas State Bar No. 01938000
M. Jill Bindler
Texas State Bar No. 02319600
**McKool Smith PC**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone:  (214) 978-4000
Facsimile:   (214) 978-4044

Brian D. Siff
Richard LaCava
Peter Lambrianakos
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, NY  10036

**ATTORNEYS FOR DEFENDANT ARQUEST, INC.**

**DEFENDANT'S MOTION TO DISMISS,
OR IN THE ALTERNATIVE, MOTION TO STAY**                    Page 1

Arquest, Inc. ("Arquest") first-filed a declaratory judgment action in the United States District Court for the Southern District of New York (the "First-Filed Action"). The next day, Kimberly-Clark Worldwide, Inc. ("Worldwide") and Kimberly-Clark Global Sales, Inc. ("Global Sales") (collectively, "K-C") filed this action (the "Second-Filed Action"). Arquest now moves to dismiss this hastily-filed Second-Filed Action.

## I.    PRELIMINARY STATEMENT

By signed agreement of the parties, K-C had the exclusive right to file a patent infringement lawsuit before Arquest *in the forum of its choice*. Thus, there was no "race" to the courthouse or forum shopping – Arquest relinquished those rights to K-C. Despite negotiating for and successfully obtaining those exclusive rights, K-C allowed those rights to expire and knowingly waived its right to file first and choose the forum in which this case would be tried.

K-C is now asking this Court to reinstate the expired agreement between the parties, restore K-C's expired rights, and impose an absolute restriction that this dispute can only be heard in the Northern District of Texas, K-C's forum of choice. K-C is forum shopping. Indeed, to allow K-C to proceed with its Second-Filed Action would render the prior agreement between the parties a complete sham.

Arquest filed the First-Filed Action because, like any reasonable plaintiff that files a declaratory judgment action, Arquest reasonably believed that K-C would bring an action against it because there was little to no chance of globally settling the disputed claims between the parties.

Arquest respectfully requests that the Court grant Arquest's motion to proceed with the First-Filed Action, and deny K-C's attempt to recapture the right to first file in the forum of K-C's choice – a right that K-C consciously and knowingly waived.

## II.    STATEMENT OF FACTS

Arquest is a manufacturer and seller of private-label diapers and training pants for sale in retail outlets such as A&P, Toys "R" Us, and H-E-B. *See* Declaration of Brian D. Siff in Support of Defendant's Motion to Dismiss, or in the Alternative, Motion To Stay ("Siff Decl."), Def. App. 1 at ¶ 2. Arquest maintains its corporate headquarters in Cranbury, New Jersey, less than 50 miles from Lower Manhattan, and its attorneys are located within the Southern District of New York. *See* Siff Decl., Def. App. 1 at ¶ 2. Arquest does not maintain a facility or any employees in the Northern District of Texas. *See id.*

Worldwide and Global Sales are believed to be subsidiaries of Kimberly Clark, Inc., the manufacturer of Huggies® diapers, the best-selling brand of diapers in the United States. *See* Siff Decl., Def. App. 2 at ¶ 3. Although Worldwide is allegedly headquartered in Dallas Texas, its operations and in-house intellectual property counsel are believed to be based in Neenah, Wisconsin, and its lead counsel is located in Chicago, Illinois. *See id.*

In July 2007, K-C notified Arquest that it believed that certain diapers and training pants manufactured by Arquest infringe United States Patent Nos. 5,286,543, entitled "Method and Apparatus for Controlling the Cutting and Placement of Components on a Moving Substrate, and Article Made Therewith;" 5,496,298, entitled "Elastomeric Ears for Disposable Absorbent Article;" and 6,307,119, entitled "Absorbent Articles Having Wetness Indicating Graphics Incorporating a Training Zone" (collectively, the "patents-in-suit"). *See* Siff Decl., Def. App. 2 at ¶ 5.

To enable the parties to negotiate a settlement of K-C's allegations without litigation, on July 18, 2007, Arquest and K-C entered into a Stand-Still Agreement that prohibited K-C from instituting litigation against Arquest for any intellectual property matter prior to thirty (30) days after the effective date of the agreement, and prohibited Arquest from instituting litigation

against K-C for any intellectual property matter prior to thirty-three (33) days after the effective date of the agreement.  *See* Siff Decl., Def. App. 2-3 at ¶¶ 6-7; Stand-Still Agreement, Def. App. 6.  Thus, K-C obtained from Arquest a three-day window in which K-C had the exclusive right to file a suit regarding infringement of the patents-in-suit.[1]  *See* Siff Decl., Def. App. 2-3 at ¶ 7.

Further, the Stand-Still Agreement imposed no limitations regarding the forum in which either party could bring suit.  *See* Siff Decl., Def. App. 2 at ¶ 6; Stand-Still Agreement, Def. App. 6.  Thus, because K-C had the right to file an action before Arquest, K-C also had the *exclusive* right to pick the forum in which it wanted to bring its lawsuit.  Under this Agreement, *there was no race to the courthouse – K-C had negotiated for and won the right be the first to file suit wherever it wanted.*

As negotiations between Arquest and K-C continued, the parties executed seven additional consecutive Stand-Still Agreements,[2] the last of which was executed on November 16, 2007.  *See* Siff Decl., Def. App. 3 at ¶ 8; Stand-Still Agreement, Def. App. 14. These consecutive Stand-Still Agreements preserved K-C's right to first-file an action in the forum of its choice. The final Stand-Still Agreement prohibited K-C from instituting suit until December 7, 2007, and prohibited Arquest from filing suit until December 10, 2007.  *See* Siff Decl., Def. App. 3 at ¶ 9; Stand-Still Agreement, Def. App. 14. At about the time this final Stand-Still Agreement was about to expire, Arquest inquired whether K-C would be willing to enter into an additional Stand-Still Agreement, further extending the parties' agreement not to sue, as had been the parties' course of conduct up to that time.  *See* Siff Decl., Def. App. 3 at ¶ 9.  But K-C refused to

---

[1] K-C's original proposed Stand-Still Agreement gave K-C a one-week exclusive window to file suit.  Arquest countered that K-C should not have an exclusive window to file suit, but at the insistence of K-C, the final version of the Stand-Still Agreement included the three-day window. *See* Siff Decl., Def. App. 2 at ¶ 6.

[2] The additional, consecutive Stand-Still Agreements were effectively extensions of the original Stand-Still Agreement.

**DEFENDANT'S MOTION TO DISMISS,**
<u>**OR IN THE ALTERNATIVE, MOTION TO STAY**</u>                                    **Page 4**

extend the Stand-Still Agreement, thereby instilling in Arquest the belief that a suit was imminent. *See id.*

On December 7, 2007, K-C had the exclusive right to sue Arquest in the forum of its choice, as the parties had contemplated in the Stand-Still Agreements. K-C did not sue. Nor did K-C sue on December 8 or 9, additional days that it had the exclusive right to sue Arquest in the forum of its choice. *See* Siff Decl., Def. App. 3 at ¶ 10. Instead, K-C affirmatively waived its exclusive rights by not filing suit. On December 10, 2007, Arquest did not file suit although now permitted under the Stand-Still Agreement. Further, Arquest did not file suit on December 11, 2007 either. On both of these days, K-C still could have first-filed suit against Arquest, but did not. Thus, up to that point, K-C did not file suit during the five days it was permitted to do so. There was no race to the courthouse. During this time, negotiations between the parties continued. *See* Siff Decl., Def. App. 3 at ¶ 11.

On December 12, 2007, believing that negotiations between the parties would not result in a complete settlement of all of K-C's claims, Arquest filed the First-Filed Action in the Southern District of New York seeking, among other things, a declaratory judgment of non-infringement, invalidity and/or unenforceability of the patents-in-suit. *See* Siff Decl., Def. App. 3-4 at ¶ 12; Complaint, Def. App. 16.

On December 13, 2007, counsel for Arquest telephoned counsel for K-C to notify them that Arquest had filed the First-Filed Action, but that Arquest would not serve the complaint immediately so that the parties could continue to try to settle as many issues as possible before commencing active litigation. *See* Siff Decl., Def. App. 4 at ¶ 13. Within 24 hours of this telephone conversation, K-C filed the Second-Filed Action, served its complaint on Arquest, and accused Arquest of having raced to the courthouse, despite the fact that Arquest had contractually relinquished to K-C the right to sue first in the forum of its choice. *See id.*

**DEFENDANT'S MOTION TO DISMISS,**
**OR IN THE ALTERNATIVE, MOTION TO STAY**                                                                      **Page 5**

As set forth more fully below, Arquest now moves to dismiss the Second-Filed Action as duplicative of the First-Filed Action.

## III.    LEGAL ARGUMENT

### A.    The Second-Filed Action Should Be Dismissed or Stayed Because It Is Duplicative of the First-Filed Action.

This Court should dismiss the Second-Filed Action or, in the alternative, stay the Second-Filed Action pending the disposition of K-C's anticipated motion to dismiss the First-Filed Action. The Second-Filed Action is merely an attempt by K-C to recapture its contractual right to file the first lawsuit in the forum of its choice, which it knowingly waived. A refusal to dismiss the Second-Filed Action would deprive Arquest of the right, as contemplated by the parties, to choose the forum for its First-Filed Action once K-C had decided not to file suit during its exclusive three-day window.

Under the first-filed rule adopted by the Fifth Circuit, where two identical or substantially overlapping actions are filed in courts of concurrent jurisdiction, the court that first acquired jurisdiction should have priority. *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950-951 (5th Cir. 1997); *Fidelity Bank v. Mortgage Funding Corp. of Amer.*, 855 F. Supp. 901, 903 (N.D. Tex. 1994). *See also Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991). Courts in this circuit thus defer to the court where the first-filed action is being heard to determine whether a later-filed action in this circuit should proceed. *Save Power*, 121 F.3d at 950.

The Second Circuit, where the First-Filed Action was filed, also adheres to the rule that the district in which the first action was filed should enjoin the prosecution of the second action unless there are special circumstances that justify giving priority to the second action. *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir. 1991) (citations and quotations omitted); *William Gulkin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969). Special

circumstances include a balance of convenience in favor of the second action, or where forum

shopping alone motivated the choice of the forum for the first suit. *William Gulkin*, 407 F.2d at

178.

      The Second-Filed Action should be dismissed because the First-Filed Action has

priority under the first-filed rule. The two actions are substantially overlapping because the

Second-Filed Action alleges infringement of the same patents as the First-Filed Action, and both

actions involve Arquest and Kimberly-Clark entities.[3]  Given that the same evidence, witnesses

and legal arguments would be presented in both actions, permitting the Second-Filed Action to

continue would result in precisely the type of duplicative proceedings that the first-filed rule is

intended to avoid. *See Save Power*, 121 F.3d at 950 (explaining that the purpose of the first-filed

rule is "to avoid the waste of duplication, to avoid rulings which may trench upon the authority

of sister courts, and to avoid piecemeal resolution of issue that call for a uniform result")

(quoting *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir.

1985)).

      The Southern District of New York would undoubtedly conclude that the First-Filed

Action should proceed and the Second-Filed Action should be dismissed because no special

circumstances compel deviating from the first-filed rule. To the contrary, the circumstances

confirm that the first-filed rule should be followed because the Second-Filed Action was filed by

K-C solely for the purpose of forum shopping.

      The eight versions of the Stand-Still Agreement that governed the parties'

relationship in connection with the dispute over the patents-in-suit since July 18, 2007, each gave

K-C the exclusive right to file suit, without express limitation as to forum, for a three-day period

---

[3] Although Global Sales is a named plaintiff in the Second-Filed Action, Worldwide is believed to be the sole assignee of the patents-in-suit.

**DEFENDANT'S MOTION TO DISMISS,**
**OR IN THE ALTERNATIVE, MOTION TO STAY**                    **Page 7**

before Arquest would be permitted to file suit. In effect, the parties agreed that should negotiations break down, there would be no "race to the courthouse" – K-C would have the right to file the first suit as long as it did so during its exclusive three-day window. If K-C allowed the three-day window to close, however, either party would have the right to file the first suit in its chosen forum.

Ultimately, K-C did allow the three-day window to lapse, waiving its exclusive right to file the first suit in the forum of its choice and inviting Arquest to file the first suit. Having knowingly waived its contractual right to choose the forum for this dispute, K-C should not be allowed to interfere with Arquest's choice of forum by way of a second-filed suit.

K-C's conduct demonstrates that it filed the Second-Filed Action solely for forum-shopping purposes. The only plausible reason to file a mirror-image suit within 24 hours after learning that Arquest had filed the First-Filed Action (and only days after choosing not to file an action during the three-day exclusive window) is to attempt wrest the choice of forum away from Arquest. Should it be successful, K-C will have reinstated the expired Stand-Still Agreement, restored K-C's expired rights to sue first in the forum of its choice, and imposed an absolute restriction that this suit can only be heard in the forum K-C chooses. This Court should not permit K-C to forum shop or eviscerate the bargained-for agreement between the parties.

Arquest filed the First-Filed Action in the Southern District of New York for legitimate reasons: the district is convenient to Arquest's personnel and permits it to minimize legal expenses. The courthouse in the Southern District of New York is located within 50 miles of Arquest's headquarters, and litigating in the Southern District eliminates the need for Arquest to retain local counsel. Given that K-C undoubtedly ships and sells millions of dollars of products in the Southern District of New York annually, and has at least one subsidiary with an office in the district, it can hardly be heard to complain that K-C is prejudiced by the case going

**DEFENDANT'S MOTION TO DISMISS,**
**OR IN THE ALTERNATIVE, MOTION TO STAY**                     Page 8

forward in the Southern District of New York, and that Arquest filed the First-Filed Action in that district for inappropriate reasons.

In contrast, Arquest has no significant ties to the Northern District of Texas. Arquest has no offices or employees in this district. Although Worldwide, which is believed to own the patents-in-suit, is allegedly headquartered in this district, its operations are believed to be based out of Neenah, Wisconsin, and its in-house intellectual property attorneys who have been negotiating with Arquest are also located in Wisconsin. Thus, any balancing of the conveniences favors the First-Filed Action.

## IV.    **CONCLUSION**

For the foregoing reasons, the Second-Filed Action should be dismissed pursuant to the first-filed rule. In the alternative, should Worldwide file a motion to dismiss the First-Filed Action in the Southern District of New York, the Second-Filed Action should be stayed pending the decision on that motion.

Date: February 4, 2008.

Respectfully submitted,

/s/ M. Jill Bindler
Samuel F. Baxter
Texas State Bar No. 01938000
M. Jill Bindler
Texas State Bar No. 02319600
**McKool Smith PC**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Brian D. Siff
Richard LaCava
Peter Lambrianakos
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, NY 10036

**ATTORNEYS FOR DEFENDANT
ARQUEST, INC.**

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing pleading was electronically filed in compliance with Local Rule 5.1.  As such, this notice was served on all counsel who are deemed to have consented to electronic service on February 4, 2008.


                    /s/ M. Jill Bindler_____
                    M. Jill Bindler

# EXHIBIT K





® Registered Trademark of / Marque déposée de / Marca registrada de Kimberly-Clark Worldwide, Inc. *Trademark of / Marque de commerce de / Marca de comercio de Kimberly-Clark Worldwide, Inc.
© 2006 KCWW. All Rights Reserved / Tous droits réservés / Todos los derechos reservados.
© Disney. Based on the "Winnie the Pooh" works / D'après l'œuvre originale "Winnie the Pooh" / Basado en las obras de "Winnie the Pooh" / de / por A.A. Milne and / et / y E.H. Shepard.
Box Tops for Education is a Trademark of General Mills, Inc., used with permission.
Made under one or more of the following U.S. patents / Fabriquées en vertu de l'un ou plusieurs des brevets suivants, déposés aux É.-U. / Fabricado bajo una o más de las siguientes patentes de los
E.E.U.U. 6,698,362; 6,406,467; 6,148,934; 6,075,179; 5,882,768; 5,879,341; 5,858,515; 5,843,057; 5,843,056; 5,837,352; 5,601,542; 5,599,338; 5,592,550; 5,522,810; 5,490,846; 5,364,382;
5,318,555; 5,286,543; 5,236,992; 5,147,343; 4,798,603; 4,713,069.

30
couches
pañales

# EXHIBIT L



