**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Arquest, Inc., | ) |
| | ) |
|     Plaintiff | ) |
| | ) Case No. 07 CV 11202 (CM) |
| v. | ) |
| | ) |
| Kimberly-Clark Worldwide, Inc., | ) |
| | ) |
|     Defendant | ) |

**KIMBERLY-CLARK WORLDWIDE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, TO DISMISS OR TRANSFER**

**TABLE OF CONTENTS**

I. Introduction .................................................................................................................. 1

II. This Court Cannot Properly Exercise Personal Jurisdiction Over KCWW ........................ 1

    A. There Is No Jurisdiction Under the New York Long Arm Statute ................................ 2

        1. There is No General Jurisdiction Over KCWW ......................................................... 2

        2. There is No Specific Jurisdiction Over KCWW ......................................................... 4

    B. Exercising Personal Jurisdiction Over KCWW Does Not Comport With Constitutional Due Process .......................................................................................... 6

III. This Court Should Decline Declaratory Judgment Jurisdiction ........................................ 7

IV. All Counts Should Be Transferred to Texas ..................................................................... 10

V. Conclusion ......................................................................................................................... 10

**TABLE OF AUTHORITIES**

**Cases**

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
    860 F.Supp. 128 (S.D.N.Y. 1994) ............................................................................... 8

*Beacon Enters., Inc. v. Menzies*,
    715 F.2d 757 (2d Cir. 1983) ...................................................................................... 1

*Bordiga v. Directors Guild*,
    159 F.R.D. 457 (S.D.N.Y. 1995) .......................................................................... 8, 10

*Breckenridge Pharm., Inc. v. Metabolite Labs, Inc.*,
    444 F.3d 1356 (Fed. Cir. 2006) ............................................................................. 6, 7

*Citigroup Inc. v. City Holding Co.*,
    97 F.Supp. 549 (S.D.N.Y. 2000) ........................................................................... 8, 9

*EMC Corp. v. Norand Corp.*,
    89 F.3d  807 (Fed. Cir. 1996) .................................................................................... 9

*Frummer v. Hilton Hotels Int'l., Inc.*,
    19 N.Y.2d 533, 227 N.E.2d 851 (1967) .................................................................... 2

*Genetic Implant Systems, Inc. v. Core-Vent Corp.*,
    123 F.3d 1455 (Fed. Cir. 1997) ................................................................................. 7

*Graphic Controls Corp. v. Utah Med. Prods., Inc.*,
    149 F.3d 1382 (Fed.Cir.1998) ............................................................................... 5, 6

*Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*,
    119 F.Supp.2d 433 (S.D.N.Y.  2000) ........................................................................ 8

*Ivoclar Vivadent, Inc. v. Ultident, Inc.*,
    NO. 04-CV-0984, 2005 WL 1421805 (W.D.N.Y., Jun 15, 2005) ............................. 3

*Kash 'n Gold, Ltd. v. ATSPI, Inc.*,
    690 F.Supp. 1160 (E.D.N.Y. 1988) ........................................................................... 5

*MedImmune, Inc. v. Genentech, Inc.*,
    127 S.Ct. 764 (2007) .................................................................................................. 7

*Medpay Systems, Inc. v. Medpay USA, LLC*,
    NO. 06-CV-1054, 2007 WL 1100796  (E.D.N.Y. Mar 29, 2007) ............................. 6

*PDK Labs, Inc. v. Friedlander*,
    103 F.3d 1105 (2nd Cir. 1997) .................................................................................. 5

*Philips Electronic North America Corp. v. Maeser*,
   1997 WL 362176, 43 U.S.P.Q.2d 1541 (S.D.N.Y. Jun 26, 1997) ............................................ 4

*Pieczenik v. Dyax Corp.*,
   265 F.3d 1329 (Fed. Cir. 2001) ....................................................................................... 3, 5

*Serco Services Co. v. Kelley Co., Inc.*,
   51 F.3d 1037 (Fed. Cir. 1995) ............................................................................................ 7

*Standard Wine & Liquor Co. v. Bombay Spirits Co.*,
   20 N.Y.2d 13, 281 N.Y.S.2d 299, 228 N.E.2d 367 (1967) .................................................. 3

*Wiwa v. Royal Dutch Petroleum Co.*,
   226 F.3d 88 (2nd Cir. 2000) ............................................................................................ 2, 3

## Statutes

28 U.S.C. § 1404 .................................................................................................................... 10

CPLR § 301 ......................................................................................................................... 2, 4

CPLR § 302 ............................................................................................................................. 5

## Rules

Fed.R.Civ.P. 12(b)(2) ............................................................................................................... 1

Fed.R.Civ.P. 21 ...................................................................................................................... 10

**I. INTRODUCTION**

Arquest's theories for why this Court supposedly has personal jurisdiction over Kimberly-Clark Worldwide, Inc. ("KCWW") do not hold up to scrutiny. First, KCWW and Kimberly-Clark Global Sales ("KCGS") are separate corporate entities. There is no "agency" relationship between KCWW and KCGS under New York's long-arm statute, largely because KCGS markets and sells *its own products* in New York – not KCWW products. Moreover, the grant of a license to a separate entity that distributes in New York does not constitute "transacting business" under the New York long-arm statute. Second, KCWW's settlement discussions with Arquest's New York based counsel are not "business transactions" under the long-arm statute. Third, exercising personal jurisdiction over KCWW does not comport with "due process" because KCWW has not purposefully directed any activities at residents of New York. KCWW's communications with Arquest's outside New York attorneys were directed at Arquest, a corporation located in New Jersey and Arkansas – not New York.

Finally, Arquest misses the mark regarding KCWW's request that this Court, under its discretion, decline declaratory judgment jurisdiction in this case, or transfer the case to the Northern District of Texas. Tellingly, Arquest has provided absolutely no contacts that link Arquest to New York. As explained in further detail below, KCWW's motion should be granted.

**II. THIS COURT CANNOT PROPERLY EXERCISE PERSONAL JURISDICTION OVER KCWW**

When a defendant brings a motion under Fed.R.Civ.P. 12(b)(2) to dismiss an action for lack of personal jurisdiction, the plaintiff bears "the ultimate burden of proving the court's jurisdiction by a preponderance of the evidence." *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 762 (2d Cir. 1983). Arquest has not met, and cannot meet, its burden in this case.

## A. THERE IS NO JURISDICTION UNDER THE NEW YORK LONG ARM STATUTE

### 1. THERE IS NO GENERAL JURISDICTION OVER KCWW

Arquest's "jurisdiction through agency" theory cannot hold up to scrutiny, legally or factually. Contrary to Arquest' arguments, KCGS does not act as KCWW's sales agent or distributor in New York. The products that KCGS sells in New York are KCGS products; ***they are not KCWW products***. The uncontroverted evidence in this case is that KCWW does not have any products - KCWW does not own any raw materials, work-in-process or finished goods inventory for any of the goods its manufactures. (Misun Decl. at ¶ 7).

To establish an agency relationship under CPLR § 301, Arquest must show that KCGS acts as KCWW's agent to the extent that KCGS "renders services on behalf of the [KCWW] that go beyond mere solicitation and are sufficiently important to [KCWW] that the [KCWW] would perform equivalent services if no agent were available." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2nd Cir. 2000) (citing *Frummer v. Hilton Hotels Int'l., Inc.*, 19 N.Y.2d 533, 537, 227 N.E.2d 851, 853-54 (1967)). Under this standard, KCGS is not an agent of KCWW. KCGS selling KCGS products in New York does not constitute KCGS rendering services on behalf of KCWW. Consequently, Arquest's argument that KCWW itself would perform KCGS's "equivalent services" in New York if KCGS were not available is non-sensical. There is no basis to make the wholly unsupported leap that if KCGS did not sell KCGS products in New York, KCWW would undertake to acquire products of its own, and then set-up a distribution and marketing network in New York to sell and distribute such hypothetical products.

Because KCGS does not provide a service that KCWW would perform if KCGS were unavailable, KCGS is not KCWW's agent. Arquest has offered no facts or evidence to the

contrary. In fact, Arquest admits that it has no evidence that KCGS is an agent of KCWW.[1] (Arquest's Opp. p. 7 (stating "it is unclear whether KCGS is KCWW's agent.")).

Moreover, Arquest's reliance on the *Wiwa* case is misplaced. *Wiwa* involved an investor relations firm that was, unlike this case, the defendant's acknowledged New York agent. *Wiwa* 226 F.3d at 97. Furthermore, in *Wiwa* the acknowledged agents, performed activities such as "fielding inquiries from investors and potential investors to organizing meetings between defendants' officials and investors, potential investors, and financial analysts." *Id.* at 97-98. The *Wiwa* Court, therefore, specifically found that the defendant would perform similar investor relation services if the agent was not available. *Id.* at 96. In contrast, because KCWW does not have any products to distribute or market, and because KCGS is not distributing or marketing KCWW's products, there is no basis to find an agency relationship for jurisdictional purposes.

Finally, Arquest's assertion that KCGS's actions establish general jurisdiction because "the law nevertheless imputes its actions to KCWW for general jurisdiction purposes because KCGS is an affiliated entity that represents KCWW's interests in this forum" is wholly

---

[1] This Court should also deny Arquest's request for discovery. First, the uncontroverted record evidence establishes that KCWW does not own any raw materials, work-in-process or finished goods inventory for any goods it manufactures (Misun Decl. ¶7), and sales by KCGS of KCGS products in New York does not constitute transacting business for KCWW under New York law. There is, therefore, no basis for discovery. *See Ivoclar Vivadent, Inc. v. Ultident, Inc.*, NO. 04-CV-0984, 2005 WL 1421805, at *14 (W.D.N.Y., Jun 15, 2005) (stating that "jurisdictional discovery is not permitted where . . . the defendant submits an affidavit that provides all necessary facts and answers all questions regarding jurisdiction"). Second, Arquest improperly asks the Court to grant discovery of KCGS's activities in the forum when KCGS is not even a party to this action. Finally, the licensee-licensor relationship of KCWW and KCGS is of no relevance to this inquiry. "[T]he grant of licensing rights to a New York corporation does not constitute the transaction of business within the meaning of the New York long-arm statute." *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1335 (Fed. Cir. 2001) (licensing agreement was insufficient to show jurisdiction under New York's long arm statute); *see also Standard Wine & Liquor Co. v. Bombay Spirits Co.*, 20 N.Y.2d 13, 16-17, 281 N.Y.S.2d 299, 300-02, 228 N.E.2d 367, 368 (1967) (granting exclusive right to sell products in New York did not amount to transacting business in the state).

3

unfounded. (Arquest's Opp. p. 8). Unsurprisingly, Arquest offers neither case law nor facts supporting this proposition. That KCWW's name appears on the packaging of KCGS's products as owner of licensed intellectual property is no more relevant than the fact that both Disney and General Mills are listed on the same KCGS packaging. (*See* Declaration of Brian D. Siff, Exhibits K, L). If Arquest's theory were adopted, every company (1) associated by corporate relationship with KCGS, or (2) listed on any of KCGS's packaging, would be subject to general jurisdiction in New York based on the sales activities of KCGS. There is simply no support for Arquest's argument. KCWW is not "doing business" under CPLR § 301 through KCGS and there is no general jurisdiction over KCWW in New York.

### 2. THERE IS NO SPECIFIC JURISDICTION OVER KCWW

Arquest cannot manufacture personal jurisdiction over KCWW through Arquest's choice of counsel in this forum. Nevertheless, Arquest argues that this Court has personal jurisdiction over KCWW because *Arquest* chose to hire outside counsel in New York. Specifically, Arquest goes to great lengths to characterize the parties' settlement negotiations in an attempt to manufacture "business transactions" where none exist. Simply put, KCWW's only contacts with New York are its attempts to settle this dispute with Arquest, **a corporation with locations in New Jersey and Arkansas** (*see* Rinaldi Dec. ¶ 4), via conversations with Arquest's outside counsel who happen to be located in New York. These settlement communications, however, cannot support specific jurisdiction over KCWW.

Settlement discussions are not "business transactions" under New York law. *See, e.g., Philips Electronic North America Corp. v. Maeser*, 1997 WL 362176, at *2, 43 U.S.P.Q.2d 1541, 1541 (S.D.N.Y. Jun 26, 1997) (finding that contacts between defendant's attorneys located in Illinois and plaintiff's attorneys in New York regarding patent infringement and licensing were not business transactions and dismissing the case for lack of specific jurisdiction); *see also*

4

*Kash 'n Gold, Ltd. v. ATSPI, Inc.*, 690 F.Supp. 1160, 1163 (E.D.N.Y. 1988) ("[T]he court is concerned that those claims are addressed to what seems to have been a failed attempt to settle a dispute out of court. Public policy in favor of settling disputes would be frustrated if the law permitted consent to jurisdiction to be the price of failure to reach an agreement.").

Although a single business transaction is sufficient to satisfy the nexus test under CPLR § 302(a)(1), "the ***cause of action*** must arise from the transaction of business in New York." *Pieczenik* 265 F.3d at 1333 (citations omitted) (emphasis added). "The so-called nexus test, is interpreted very narrowly by the New York courts." *Id.* (citing *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1386 (Fed.Cir.1998)). Arquest's cause of action relates to the infringement and validity of KCWW's patents. Thus, KCWW's settlement discussions with Arquest's outside counsel are not the "transaction of business" that gave rise to the action.

*PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105 (2nd Cir. 1997), does not hold otherwise. In *PDK*, the ***defendants*** hired attorneys in New York that "specifically enforce[d] defendants' patent rights from New York and [sought] investments in defendants' product from New York." *PDK Labs,* 103 F.3d at 1109. Thus, the *PDK* defendant voluntarily created the contact with New York by hiring New York counsel. In contrast, Arquest, not KCWW, hired New York counsel. Further, in *PDK*, the defendant was doing more than attempting to enforce patent rights in New York, it was also seeking investments. In contrast, KCWW's communications with Arquest's New York counsel were directed only at resolving a patent dispute with a corporation that is not even located in New York.[2] The *PDK* Court itself distinguishes cases, like this, that involve "sending a 'cease and desist' letter . . . and attempting to settle alleged legal claims." *Id*. Settlement communications are not business transactions under New York law, thus there is no

---

[2] As set forth in more detail in Section IV below, not only is Arquest not located in New York, it has no connections to New York except for its outside counsel.

nexus between the New York negotiations and the suit, and no specific jurisdiction. *See Graphic Controls*, 149 F.3d at 1387-88.

Because there is no specific or general jurisdiction under New York's long arm statute, this Court should dismiss the case for lack of personal jurisdiction. As such, this Court does not need to address constitutional requirements for personal jurisdiction. *See, e.g., Medpay Systems, Inc. v. Medpay USA, LLC*, NO. 06-CV-1054, 2007 WL 1100796, at *8 (E.D.N.Y. Mar 29, 2007).

### B. EXERCISING PERSONAL JURISDICTION OVER KCWW DOES NOT COMPORT WITH CONSTITUTIONAL DUE PROCESS

Even if the Court finds jurisdiction under New York's long arm statute, KCWW's contacts with New York still do not satisfy the constitutional requirements of due process. KCWW has not "purposefully directed" its actions at residents of New York. Rather, KCWW's actions in enforcing its patents-in-suit were purposefully directed at Arquest, ***who is a resident of New Jersey and Arkansas.*** (Rinaldi Dec. ¶ 4).

In order to determine whether the exercise of personal jurisdiction satisfies the "requirements of due process, the Federal Circuit requires this Court to determine whether: (1) KCWW purposefully directed its activities at the residents of the forum; (2) the claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair." *Breckenridge Pharm., Inc. v. Metabolite Labs, Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006). In this case, exercising personal jurisdiction over KCWW would not comport with "traditional notions of fair play and substantial justice" because KCWW has not "purposefully directed" its activities at residents of New York.

KCWW's communications via email and phone calls with Arquest's outside counsel, located in New York, can hardly be considered business transactions in New York; rather, they were ultimately directed at Arquest, a corporation located in New Jersey and Arkansas. (*See*

6

Rinaldi Dec. ¶ 4).  Thus, the location of Arquest's outside attorneys is of no consequence.

All of the cases cited by Arquest are therefore distinguishable.  In particular, both the *Metabolite* and *Genetic Implant* defendants (patent owners) communicated with the accused infringers who were actually located in the forum state, which ultimately led to the declaratory judgment action being filed in the forum state.  *Metabolite*, 444 F.3d at 1366-67; *Genetic Implant Systems, Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997).  In *Metabolite*, the defendant sent cease and desist letters to the plaintiff in the forum state – Florida.  *Metabolite*, 444 F.3d at 1366-67.  Similarly, in *Genetic Implant*, the defendant sent cease and desist letters to the plaintiff in the forum state – Washington.  *Genetic Implant*, 123 F.3d at 1458.  In contrast, and as discussed above, KCWW has not sent any cease and desist letters or otherwise "purposefully directed" any activities toward a resident of New York because Arquest is not a resident of New York.

The first factor of the due process test therefore cannot be met.  For this reason, and those related to the New York long-arm statute, KCWW is not subject to jurisdiction in New York.

## III. THIS COURT SHOULD DECLINE DECLARATORY JUDGMENT JURISDICTION

As set forth in detail in KCWW's Memorandum, the Court should exercise its discretion and decline jurisdiction in this case.  The Declaratory Judgment Act accords district courts discretion to decline jurisdiction for declaratory judgment actions in situations like the present case.  *MedImmune, Inc. v. Genentech, Inc*., 127 S.Ct. 764, 776 (2007).  Arquest does not have an absolute right to a declaratory judgment action.  *Serco Services Co. v. Kelley Co., Inc.,* 51 F.3d 1037, 1039 (Fed. Cir. 1995).  Because Arquest filed its complaint in a transparent effort to gain leverage in the parties' ongoing settlement discussions by attempting to secure the New York forum for any possible future litigation, this Court should decline jurisdiction.

Rather than addressing the Court's discretion to decline jurisdiction, Arquest argues that its first filed action should take priority. As set forth in detail above, because there is no personal jurisdiction over KCWW in New York, Arquest's case should not be considered the first filed. The Texas case is the first filed case where there is personal jurisdiction over all the parties.[3] In addition, special circumstances justify giving priority to the Texas case. *See, e.g, Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F.Supp.2d 433, 440-41 (S.D.N.Y. 2000). Arquest admits that it filed its complaint in New York as a "placeholder" to make sure that if the parties could not resolve the patent issues between the parties that any litigation would proceed in New York. (Arquest Opposition., p. 17). This type of forum shopping justifies not giving priority to a first filed action. *Invivo Research*, 119 F.Supp.2d at 440-41.

Moreover, Arquest's stated reason for wanting to secure the New York forum is because Arquest's counsel is located in New York, and it avoids the need to retain local counsel should be given little weight. (*See* Rinaldi Dec. ¶ 6).[4] *Bordiga v. Directors Guild*, 159 F.R.D. 457, 463 (S.D.N.Y. 1995) (finding in the context of a transfer motion that the "Court accords little weight to the convenience of plaintiffs' attorneys" or the need to retain local counsel).

Arquest's heavy reliance on the *Citigroup* case is misplaced. In the *Citigroup* case, the parties were not involved in settlement discussions. *Citigroup Inc. v. City Holding Co.*, 97 F.Supp. 549, 558 (S.D.N.Y. 2000).[5] The *Citigroup* court also placed significant weight on the

---

[3] Arquest does not deny that personal jurisdiction is proper in the Northern District of Texas.

[4] Arquests's stated rationale is questionable, at best. Had Arquest chosen to file in New Jersey, where it is a resident, it could have done so with the same counsel, and not incurred local counsel expense. Mr. Lambriankos, Arquest's Manhattan based litigation counsel in this case, is also admitted to practice in New Jersey according to his firm's website. The Newark court is less than 15 miles from New York counsel, and less than 50 miles from Arquest's office.

[5] The *800-Flowers* case is likewise distinguishable in that the parties were not involved in settlement discussions. *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 132-33 (S.D.N.Y. 1994).

8

location of Citigroup's headquarters in New York. *Id*. at 560. In addition, the court *distinguished* cases where, as here, the plaintiff lulled the defendant into not filing suit with settlement discussions. *Id*. at 558. As set forth in KCWW's Memo, KCWW did not file suit after the expiration of the November 16, 2007 Stand-Still Agreement because the parties were still engaged in active settlement discussions. (KCWW's Memo, pp. 8-10). Further, because Arquest's headquarters are in New Jersey, not New York, there is no "significant connection" between Arquest and New York to dispel that filing in New York was simply forum shopping.

Finally, Arquest fails to refute the applicability of the *EMC* court's holding that declaratory judgment jurisdiction should be declined. Arquest argues that the *EMC* case does not apply because Arquest never believed its complaint "would somehow pressure [KCWW] into settlement on Arquest's terms." (Arquest Opposition, p. 18). This misses the mark. The *EMC* court declined declaratory judgment jurisdiction because that case, like this one, did not further the objectives of the Declaratory Judgment Act. *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 815 (Fed. Cir. 1996). In *EMC*, the court found that EMC filed its declaratory judgment complaint as a tactical measure to improve EMC's posture in the on-going negotiations. *Id*. The tactical advantage that Arquest attempted to gain by filing its admitted "placeholder" complaint was that if settlement discussions broke down, Arquest would be in the forum of its choice – a forum where Arquest is not even located.

The *EMC* case and the numerous other cases ignored by Arquest in its opposition find that filing a case as a "placeholder," while at the same time continuing settlement negotiations, is an attempt to afford itself an unfair tactical advantage that is contrary to purpose of the Declaratory Judgment Act. (*See* KCWW's Memo, pp. 12-16). Arquest's actions in lulling KCWW into believing the parties were continuing settlement discussions while at the same time

9

racing to the New York Court for the convenience of its outside counsel should not be condoned. This Court should use its discretion and decline declaratory judgment jurisdiction.

## IV. ALL COUNTS SHOULD BE TRANSFERRED TO TEXAS

As set forth in detail in KCWW's Memorandum, transfer to the Northern District of Texas, pursuant to Fed.R.Civ.P. 21 and 28 U.S.C. § 1404, is appropriate in this case. (KCWW's Memo, pp. 17-22). Although Arquest argues that the factors for transfer weigh against transferring this case, notably missing from Arquest's opposition is any real connection of Arquest to New York. The single purported connection that Arquest has identified with New York is the location of its outside legal counsel. Arquest provides:

- No evidence that Arquest engages in any activity in New York.
- No evidence that Arquest owns property in New York.
- No evidence that Arquest has any employees, offices or inventory in New York.
- No evidence that Arquest has any manufacturing facilities in New York.
- No evidence that Arquest is registered or licensed to do business in New York. (The New York Secretary of State's business registration database has no listing for Arquest.)
- No evidence that Arquest has made, used, sold, offered to sell, distributed or shipped any products in New York.

The only convenience or interest served by not transferring this case to Texas is the convenience of Arquest's outside counsel which carries little weight. *Bordiga,* 159 F.R.D. at 463.

## V.  CONCLUSION

For the foregoing reasons and the reasons in KCWW's original memorandum, this Court should dismiss this case or transfer Arquest's complaint to the Northern District of Texas.

Dated: February 29, 2008	Respectfully submitted,
  New York, New York.


   s/Gregory W. Gilliam
  Edmund M. O'Toole (EO 7939)
  Matthew T. McLaughlin (MM 6241)
  Gregory W. Gilliam (GG 2857)
  **Venable, LLP**
  Rockefeller Center
  1270 Avenue of the Americas
  25th Floor
  New York, NY 10020
  Tel. (212) 307-5500

  Marc S. Cooperman, Esq.
   *mcooperman@bannerwitcoff.com*
  Janice V. Mitrius, Esq.
   *jmitrius@bannerwitcoff.com*
  Thomas J. Lerdal, Esq.
   *tlerdal@bannerwitcoff.com*
  **Banner & Witcoff, LTD.**
  10 South Wacker Drive, Suite 3000
  Chicago, IL 60606
  Tel: (312) 463-5000
  Fax: (312) 463-5001

  **Attorneys for Plaintiff**
  **Kimberly-Clark Worldwide, Inc.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of February, 2008, a copy of *Kimberly-Clark Worldwide's Reply In Support Of Its Motion To Dismiss For Lack Of Personal Jurisdiction Or, Alternatively, To Dismiss Or Transfer* were delivered by electronic notification to the all counsel addressed below.

_____s/ Gregory W. Gilliam_____

TO:

    Brian Douglas Siff, Esq.
        siffb@docksteinshapiro.com
    Peter Lambrianakos, Esq.
        lambrianakosp@dicksteinshapiro.com
    Richard LaCava, Esq.
        lacavar@dicksteinshapiro.com
    Dickstein Shapiro LLP
    1177 Avenue of the Americas
    New York, New York 10036-2714