UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
ARQUEST, INC.,

        Plaintiff,

v.

KIMBERLY-CLARK WORLDWIDE, INC.,

        Defendant.
------------------------------------x

Civ. Action No.: 1:07-cv-11202 (CM)

ECF Case

Jury Demanded

## MEMORANDUM OF LAW OF PLAINTIFF, ARQUEST, INC., IN FURTHER OPPOSITION TO THE MOTION OF DEFENDANT, KIMBERLY-CLARK WORLDWIDE, INC., TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Brian D. Siff (BS 6135)
Richard LaCava (RL 1671)
Peter Lambrianakos (PL 5075)
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 277-6500

Attorneys for Plaintiff
Arquest, Inc.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.     PRELIMINARY STATEMENT ................................................................................ 1

II.    STATEMENT OF FACTS ......................................................................................... 2

III.   LEGAL ARGUMENT ................................................................................................ 3

       A.    KCWW Is Subject to General Personal Jurisdiction in this District Through the
             Activities of KCGS in New York ..................................................................... 3

       B.    KCWW Lack of Ownership in the Goods Sold in New York Is Irrelevant to the
             Jurisdictional Analysis ...................................................................................... 6

       C.    The Exercise of General Jurisdiction over KCWW Is Consistent with
             Constitutional Due Process ............................................................................... 8

IV.    CONCLUSION ........................................................................................................... 9

# TABLE OF AUTHORITIES

Page

Cases

*Breckenridge Pharma., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006) ...... 8

*Bulova Watch Co. v. K. Hattori & Co.*, 508 F. Supp. 1322, 1335 (E.D.N.Y. 1981) ...................... 7

*Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1353 (S.D.N.Y. 1992). 6, 7

*Gelfand v. Tanner Motor Tours, Ltd.*, v. 385 F.2d 116, 121 (2d Cir. 1967), *cert. denied*, 390 U.S. 996, 88 S. Ct. 1198 (1968) .................................................................................................... 4, 5

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16, 104 S. Ct. 1868, 1872-73 (1984) ............................................................................................................................ 8

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985) ...................................... 4

*Ivoclar Vivadent, Inc. v. Hasel*, 2003 WL 21730520, *4 (W.D.N.Y. June 30, 2003) .................... 6

*Landoil Resources Corp. v. Alexander & Alexander Svces., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) ............................................................................................................................................ 4

*LSI Industries Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1374 (Fed. Cir. 2000) ..................... 8

*Miller v. Surf Properties, Inc.*, 4 N.Y.2d 475, 481, 176 N.Y.S.2d 318 (1958) ........................... 4, 5

*Palmieri v. Estefan*, 793 F. Supp. 1182, 1192, n.12 (S.D.N.Y. 1992) ......................................... 5, 7

*Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917) .................................. 4

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) ........................................ 4, 5

Statutes

C.P.L.R. § 301 .............................................................................................................................. 3, 8

Arquest, Inc. ("Arquest") submits this brief in further opposition to Kimberly-Clark Worldwide, Inc.'s ("KCWW") motion to dismiss Arquest's first-filed declaratory judgment action against KCWW in this Court.[1]

I.  **PRELIMINARY STATEMENT**

KCWW's witness, Mr. John Wesley, testified as to key facts that KCWW omitted from its first two briefs, which undoubtedly establish that KCWW does business in New York on a permanent and continuous basis, and that KCWW is subject to general personal jurisdiction in this district.

Although Arquest's opposition to the motion to dismiss focused on KCWW's relationship with KCGS, and particularly whether KCWW licenses the patents-in-suit to KCGS for exploitation in this district, KCWW elected not to submit a reply affidavit shedding any light on these allegations. Rather, KCWW chose to stand on the Declaration of Charles Misun, which conspicuously avoided revealing KCWW's relevant licensing and manufacturing activities that reach this district. As a result, until the Court ordered KCWW to provide a witness for examination, KCWW had never informed the Court that, *inter alia,* (1) KCWW exploits its patents, copyrights, and world-famous, billion-dollar trademarks – including Huggies® diapers, Kleenex® tissues, and Scott® paper towels – by licensing this intellectual property to KCGS for the sale of millions of dollars of covered products in thousands of retail locations throughout New York, and (2) KCWW manufactures millions of dollars of products that are ultimately sold in New York through KCGS.

Now that KCWW has revealed the true extent of its business activities in New York, it can no longer evade the jurisdiction of this Court. It would be patently unjust for KCWW to reap profits and goodwill from sales to consumers in this district and to enjoy the protection of this Court while remaining beyond the jurisdiction of this district. Arquest, therefore, respectfully requests that this Court deny KCWW's motion to dismiss or transfer so that this action may proceed.

---

[1] Arquest does not address the motion to transfer, as the Court has stated that this case will not be transferred if the Court has jurisdiction over KCWW.

## II.    STATEMENT OF FACTS

Two of KCWW's primary business functions are to act as an intellectual property holding company and as a manufacturer. *See* Testimony of John Wesley ("Wesley Test."), attached to the Declaration of Brian Siff in Further Opposition to Defendant's Motion to Dismiss as Exhibit A, at 17:13-15; 18:24-19:3. According to John Wesley, assistant secretary of both KCWW and KCGS, KCWW owns all of the intellectual property for all of Kimberly Clark Corporation's ("Kimberly-Clark") products. *See id.* at 37:19-21. The licensed intellectual property includes "brand names, trademarks, know-how, and then patents for products that are not in dispute, Kleenex and paper towels and tissue products and medical products." *See id.* at 19:1-3. The number of patents KCWW licenses to KCGS may number in the thousands. *See id.* at 19:5-11.

Not only does KCWW license all of the intellectual property covering products owned by Kimberly-Clark, but every product that is sold by Kimberly-Clark in the United States is distributed by KCGS. *See id.* at 37:19-21; 42:20-43:4. Thus, all of the Kimberly-Clark products covered by KCWW's intellectual property are distributed by KCGS. *See id.* at 37:19-21. KCGS was set up by Kimberly-Clark, its parent company, to perform this sales function in the United States. *See id.* at 42:20-43:4.

KCGS pays a license fee to KCWW for the use of KCWW's intellectual property. *See id.* at 25:8-11. From 2003 through 2007, the license fee was a "flat fee," and in 2008, the royalty fee will be based on a "residual profits methodology." *See id.* at 25:12-13, 16-21.

KCWW also benefits from the sales of trademarked goods in New York in the form of increasing the value of the goodwill associated with the trademarks. *See id.* at 30:7-16. KCWW's trademarks, all of which undeniably are used to sell products in New York and distinguish those products from competitors' products, are worth billions of dollars. The Huggies® mark is worth billions of dollars. *See id.* at 31:5-6. Kleenex® and Scott® are billion-dollar brands in that they are used to sell over a billion dollars worth of products. *See id.* at 38:19-24. The brands themselves are worth more than a billion dollars each. *See id.* at 38:24. Products bearing these KCWW-owned marks are sold in New York. *See id.* at 38:25-39:4. KCWW's copyrights are also valuable in that they help sell products bearing the copyrighted material. *See id.* at 33:24-34:1.

KCWW admits that sales in New York of products covered by its intellectual property are important to it, and that if KCGS were unable to make those sales, KCWW would find a way to sell those products. *See id.* at 39:23-24. Either KCWW would step in to make the sales, or another Kimberly-Clark entity would make the sales. *See id.* at 39:10-16. KCWW definitely would like to see its products sold in New York, and certainly would not forego sales in New York. *See id.* at 32:4-6.

KCGS is responsible for soliciting and consummating sales of products covered by KCWW's intellectual property in New York, and distributing those products in New York. *See id.* at 12:3-15; 24:20-23. KCGS also forecasts manufacturing requirements, requests the manufacture of product from KCWW and other Kimberly-Clark-affiliated manufacturers, and takes delivery of the manufactured products for distribution. *See id.* at 10:20-11:2; 12:3-15.

KCGS is also responsible for enforcing KCWW's intellectual property in New York.[2] *See id.* at 40:4-7. KCWW has the right to decide whether to enforce a particular right; if it foregoes enforcement, KCGS may enforce the right. *See id.* at 40:7-9.

KCWW owns three factories which produce consumer products sold under famous, billion-dollar trademarks. *See id.* at 9:15-19. KCWW's Fullerton, California facility manufactures tissue products, including those sold under the Kleenex® mark. *See id.* at 9:17-19. Another facility, located in Everett, Washington, produces paper towels and paper napkins sold under the Scott® brand. *See id.* at 10:4-6. KCWW's Ogden, Utah factory manufactures diapers and training pants under the Huggies® mark, some of which make their way into the New York market through KCGS. *See id.* at 10:8-13; 16:7-9.

### III.     LEGAL ARGUMENT

####     A.     KCWW Is Subject to General Personal Jurisdiction in this District Through the Activities of KCGS in New York

This Court has general jurisdiction over KCWW under N.Y. C.P.L.R. § 301 because KCWW is "doing business" in New York. "A corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York 'not occasionally

---

[2] In light of this admission, Arquest may amend the complaint to add KCGS as a defendant if this Court retains jurisdiction over this case.

or casually, but with a fair measure of permanence and continuity.'" *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (quoting *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985) and *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917)).

"The test is a 'simple pragmatic one,' . . . which is necessarily fact sensitive because each case is dependent upon its own particular circumstances. . . . The Court must therefore analyze a defendant's connections to the forum state 'not for the sake of contact-counting, but rather for whether such contacts show a continuous, permanent and substantial activity in New York.'" *Landoil Resources Corp. v. Alexander & Alexander Svces., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) (internal citations omitted).

As Arquest argued in its opposition brief, KCWW is subject to general jurisdiction in New York through the activities of its representative in New York, KCGS.[3] While all of the facts necessary to establish jurisdiction through an agent were not available at the time the opposition brief was filed, the testimony of KCWW's John Wesley now establishes that KCGS acts as KCWW's jurisdictional agent in New York for the exploitation of KCWW's intellectual property and the sale and distribution of its manufactured goods.

Under the agency theory of general jurisdiction, jurisdiction over a foreign corporation may be predicated on activities performed in New York by a representative entity. *See Wiwa*, 226 F. 3d at 95. According to the Second Circuit, the "decisive test" is whether the foreign corporation's "New York representative provides services beyond 'mere solicitation' and these services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Gelfand v. Tanner Motor Tours, Ltd.*, v. 385 F.2d 116, 121 (2d Cir. 1967), *cert. denied*, 390 U.S. 996, 88 S. Ct. 1198 (1968). Moreover, the agent must primarily be employed by the defendant and not engaged in similar services for other clients, as if it were an independent contractor. *See Wiwa*, 226 F.3d at 95 (citing *Miller v. Surf Properties, Inc.*, 4 N.Y.2d 475, 481, 176 N.Y.S.2d 318 (1958)).

Although the New York representative is deemed an agent of the foreign corporation for jurisdictional purposes, no formal agency agreement is necessary, and the foreign corporation

---

[3] *See* explanation of *Wiwa* below, which does not require that the representative entity be a party to a formal agency relationship.

need not exercise direct control over the New York representative. *See Wiwa*, 226 F.3d at 95 (citations omitted).

KCWW's relationship satisfies the "decisive test" for general jurisdiction by agency because: (1) KCGS provides services beyond "mere solicitation;" and (2) these services are sufficiently important to KCWW that if KCGS no longer performed them, KCWW would undertake to perform substantially similar services.

First, KCGS does more than solicit retailers in New York to buy products covered by KCWW's intellectual property or manufactured by KCWW. KCGS actually consummates millions of dollars worth of sales, orders the manufacture of those products, and distributes the products to retailers in New York. *See* Wesley Test. at 12:3-15; 24:20-23. KCGS is also responsible for enforcing KCWW's intellectual property rights against infringers in New York. *See id.* at 40:7-9. Given that KCGS has the authority not just to solicit purchases of covered products, but also to consummate sales without first consulting KCWW, KCGS provides services beyond "mere solicitation." *See Miller*, 4 N.Y.2d at 480, 176 N.Y.S.2d at 321-22 (holding that the in-state agent provides "mere solicitation" services when the hotel reservations it takes on behalf of an out-of-state hotel do not become final until the hotel accepts them).

Second, KCWW readily admits that sales of covered products in New York are of such significant importance to KCWW that if KCGS no longer sold the products, KCWW would undertake to perform substantially similar services, or another Kimberly-Clark entity would make the sales. *See* Wesley Test. at 39:10-16. The law does not require that KCWW be prepared to replace KCGS's service at the very moment that KCGS becomes unavailable. It is enough that KCWW "would find a way to sell the product if [KCGS] didn't exist," *see id.* at 39:24-40:1, thereby demonstrating that KCGS's services are pivotal to KCWW's ability to exploit its intellectual property in New York. *See Gelfand*, 385 F.2d at 121 (finding jurisdiction where the foreign corporation would have to perform the in-state services on its own if it had not retained its current New York agent or some other New York representative); *Palmieri v. Estefan*, 793 F. Supp. 1182, 1192, n.12 (S.D.N.Y. 1992) (noting that defendants' admission that if Sony Music were not in New York performing services for the defendants, they would negotiate a similar arrangement with another entity, confirms that the work of Sony Music was integral to the defendants' business).

KCWW's testimony also establishes that KCGS is primarily, and perhaps exclusively, employed to distribute products covered by KCWW's intellectual property. KCGS was set up by Kimberly-Clark to sell Kimberly-Clark's products in the United States, *see* Wesley Test. at 42:20-43:4, and Kimberly-Clark placed all of its intellectual property for these products into KCWW. *See id.* at 37:19-21. Thus, Kimberly-Clark designed its corporate structure to appoint KCGS as the entity through which KCWW's intellectual property is exploited in New York and throughout the United States.[4]

The testimony provided by KCWW thus confirms that KCWW is subject to general jurisdiction through the business activities in New York of its jurisdictional agent, KCGS. Given that KCGS undeniably sells millions of dollars of products covered by KCWW's intellectual property and manufactured by KCWW throughout New York on a permanent and continuous basis, KCWW cannot dispute that KCGS's activities are substantial enough to subject KCGS, and therefore its jurisdictional principal, KCWW, to the jurisdiction of this Court.

### B. KCWW Lack of Ownership in the Goods Sold in New York Is Irrelevant to the Jurisdictional Analysis

KCWW argued in its reply brief that KCGS is not KCWW's agent in New York because as the "owner" of the products, KCGS is acting on its own behalf when making sales in New York, and not on the behalf of KCWW. What KCWW ignores is that the nature of the activities sufficient to confer jurisdiction must be evaluated in the context of the nature of KCWW's business. *See Ivoclar Vivadent, Inc. v. Hasel*, 2003 WL 21730520, *4 (W.D.N.Y. June 30, 2003) (finding that a company's contacts with the forum for jurisdictional purposes must be examined in the context of its business of managing, enforcing and licensing patents, since such companies lack the traditional indicia of doing business – the manufacture and sale of tangible goods) (citing *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1353 (S.D.N.Y. 1992)).

One of KCWW's core businesses is licensing its intellectual property to KCGS for a fee so that KCGS can sell Kimberly-Clark's covered products in New York and elsewhere. *See*

---

[4] Although Kimberly-Clark occasionally licenses the intellectual property of non Kimberly-Clark entities, such as the characters owned by Disney or Pixar, *see* Wesley Test. at 27:20-28:1, these licenses are incidental to KCGS's primary function of selling Kimberly-Clark products covered by KCWW intellectual property.

Wesley Test. at 37:19-21; 42:20-43:4. To the extent that KCGS's efforts in New York serve this primary business function of KCWW in New York, the agency test is satisfied regardless of who owns the goods through which KCWW's intellectual property is exploited. *See Capitol*, 810 F. Supp. at 1352-53 (finding jurisdiction over foreign defendant where a substantial part of the defendant's business was protecting and licensing its patents, and the defendant's contacts with New York included its use of a patent law firm in New York).

Another of KCWW's core business is to manufacture Huggies ® diapers, Kleenex® tissues, and Scott® paper towels and napkins sold by KCGS, and KCWW does not deny that KCGS sells these products in New York. *See* Wesley Test. at 9:15-19; 10:4-6; 10:8-13; 16:7-9. KCGS's ownership over the products appears to be an effect of Kimberly-Clarks' use of toll manufacturing to optimize efficiency and to gain tax advantages. *See id.* at 15:13-16:2. However, for jurisdictional purposes, Kimberly-Clark's separation of itself into subsidiaries and its assignment of ownership of the products to KCGS should not obscure the reality that KCGS acts as KCWW's agent by selling KCWW's manufactured products in this district on a continuous basis. *See Bulova Watch Co. v. K. Hattori & Co.*, 508 F. Supp. 1322, 1335 (E.D.N.Y. 1981) (stating that when performing an agency jurisdiction analysis, the court should deal with realities and look past the "immaculate formal separation" that a corporation can create with its subsidiaries).

Finally, KCWW argues that KCGS cannot be the agent of KCWW because KCWW does not actually control KCGS's operations. Under the agency test, however, courts have not focused on whether a foreign corporation exercises control over its jurisdictional agent. *See Palmieri*, 793 F. Supp. at 1193. Rather, where the foreign corporation and its jurisdiction agent are related companies, as they are here, it is the "decisive test," which is discussed above and is easily satisfied based on KCWW's own testimony, that determines jurisdictional agency. *See id.*

KCWW's reliance on hypertechnical arguments based on its corporate structure and its lack of ownership of the goods sold cannot obscure the fact that KCWW cannot exploit its intellectual property in New York without KCGS, KCGS cannot sell its products without the permission of KCWW, and that these dependencies were created by Kimberly-Clark when it divided itself into subsidiaries. If this Court does not exercise jurisdiction over KCWW, Kimberly-Clark will have succeeded in conferring on itself the right to shield its intellectual property from litigation in this district while simultaneously reaping tremendous profits through

the sales of products covered by that very same intellectual property. This Court should prevent Kimberly-Clark's jurisdictional scheme.

Accordingly, this Court has general jurisdiction over KCWW under N.Y. C.P.L.R. § 301.

### C. The Exercise of General Jurisdiction over KCWW Is Consistent with Constitutional Due Process

The second prong of the general jurisdiction analysis is to determine whether KCWW maintains sufficient "minimum contacts" with New York to satisfy constitutional due process. *See LSI Industries Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1374 (Fed. Cir. 2000). To support general jurisdiction, the contacts with New York must be "continuous and systematic." *See id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16, 104 S. Ct. 1868, 1872-73 (1984)). Federal Circuit law governs the due process inquiry. *Breckenridge Pharma., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006).

The Federal Circuit has found that exercising general jurisdiction under circumstances similar to those present in this case satisfies constitutional due process. In *LSI Industries*, the court found that a defendant corporation with no facilities in Ohio was subject to general jurisdiction in Ohio when it used distributors in Ohio and generated annual revenues in Ohio of several million dollars, even though the defendant did not sell the allegedly infringing product in Ohio. *Id.* at 1370. According to the court, "[b]ased on [defendant's] millions of dollars of sales of lighting products in Ohio over the past several years and its broad distributorship network in Ohio, we find that [defendant] maintains 'continuous and systematic' contacts with Ohio [such that it] is subject to general jurisdiction in Ohio under the Due Process Clause." *Id.* at 1375.

The same situation is present here. KCWW does not deny that millions of dollars worth of products that are covered by its intellectual property are sold throughout New York by its distributor, KCGS, and that KCWW receives license fees and goodwill in return. *See* Wesley Test. at 25:8-11; 37:19-21. Furthermore, the products manufactured by KCWW are distributed throughout New York by KCGS in exchange for compensation on a "cost-plus" basis. *See id.* at 11:14-22. Thus, as in *LSI Industries*, KCWW is present on a continuous and systematic basis through the distribution of its covered and manufactured products throughout New York.

Accordingly, the exercise of general jurisdiction over KCWW in New York is consistent with constitutional due process.

IV.     **CONCLUSION**

For at least the foregoing reasons, Arquest respectfully requests this Court to deny KCWW's motion to dismiss and transfer.

Dated: New York, New York
April 18, 2008

DICKSTEIN SHAPIRO, LLP

By: _____
Brian D. Siff (BS 6135)
Richard LaCava (RL 1671)
Peter Lambrianakos (PL 5075)
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

Attorneys for Plaintiff, Arquest, Inc.